[L. A. No. 119. In Bank, December 31, 1896.]

EDWIN SENIOR ET AL., APPELLANTS, *v.* J. C. ANDERSON ET AL., RESPONDENTS.

WATER RIGHTS—APPROPRIATION FOR IRRIGATION—CAPACITY OF DITCH—QUANTITY LIMITED BY USER—REASONABLE DILIGENCE—ABANDONMENT OF PART.—An appropriation of water by the owner of land by means of a ditch, for the purpose of irrigation, is not measured by the capacity of the ditch through which the appropriation is made, but the appropriation is limited to such quantity not exceeding the capacity of the ditch, as the appropriator may put to a useful purpose upon his land within a reasonable time, by the use of reasonable diligence; and if he delays increase of cultivation for an unreasonable time, such delay must be construed as an abandonment of his claim of right to irrigate his whole tract, and the appropriation is limited, as against a subsequent appropriator, to necessary use as applied to the land cultivated within a reasonable time.

ID.—USE OF WATER UPON OTHER LANDS—MEASURE OF APPROPRIATION.—The measure of the quantity of water appropriated by the owner of irrigable land by means of a ditch, is the quantity of water actually appropriated for use upon such land, and although the quantity so appropriated may be used upon other lands, the fact that other lands may be, or are, irrigated from the same ditch, does not affect the quantity of water appropriated by such owner.

ID.— RIGHTS OF SUBSEQUENT APPROPRIATOR — ADVERSE USER — STATUTE
OF LIMITATIONS—RUNNING OF STATUTE.—The rights of a subsequent
appropriator having become fixed by the failure of a prior appropriator
to use more than a limited quantity for irrigation within a reasonable
time, cannot be defeated otherwise than by an adverse user for the full
period prescribed by the statute of limitations; and such statute does
not commence to run from the mere construction of ditches, or the lay-
ing of pipes, for the purpose of using the water upon the lands, in the
absence of a statutory notice of appropriation, but only from the actual
adverse use of the water upon such other lands.

ID.—COMPROMISE AGREEMENT—SPECIFIC PERFORMANCE—PART PERFORM-
ANCE OF ORAL AGREEMENT—FINDING—CONFLICTING EVIDENCE.—To
justify the specific performance of a compromise agreement between the
parties, respecting their water rights, the fact of the existence of the
contract must clearly appear, and, where part performance of an oral
agreement of compromise is relied upon, such part performance must
be clearly attributable to the contract sought to be enforced; and a find-
ing against the existence or part performance of such agreement will
not be disturbed, where the evidence thereupon is conflicting.

ID.—ACTION TO QUIET TITLE TO WATER RIGHT — PARTIES—DEFENDANTS
CLAIMING FROM COMMON SOURCE—ASSOCIATION—PARTNERSHIP—INDI-
VIDUALS.—In an action to quiet title to a water right, the plaintiffs may
join as defendants all persons who claim title from a common source ad-
versely to that claimed by the plaintiffs, and it is immaterial whether
they are a voluntary association, or are copartners, or whether they
hold whatever rights they may have as individuals.

APPEAL from a judgment of the Superior Court of
Ventura County and from an order denying a new
trial. B. T. WILLIAMS, Judge.

The facts are stated in the opinion.

*H. L. Poplin*, for Appellants.

Where plaintiff appropriated a portion of water, the
extent of the appropriation for a useful purpose limits
the use, and he may not increase that use to the detri-
ment of subsequent appropriators. (*Nevada etc. Co. v.
Powell*, 34 Cal. 109; 91 Am. Dec. 685; *Hill v. Smith*, 27
Cal. 482; *Barrows v. Fox*, 98 Cal. 66.) Defendants were
partners. (Civ. Code, secs. 2395, 2402.) Defendants
cannot retain the fruits of the contract and repudiate
the use or benefit to plaintiffs, which constitutes the
consideration therefor. (*Hendy v. March*, 75 Cal. 569;
*Decker v. Howell*, 42 Cal. 641; 1 Bates on Partnership,

secs. 30, 31, 51, 72; Parsons on Partnership, secs. 431-43.)

J. S. Chapman, for Respondent.

The rights acquired by Hines vested *eo instanti* upon the act of appropriation. (*Osgood* v. *El Dorado etc. Min. Co.*, 56 Cal. 571; *Lux* v. *Haggin*, 69 Cal. 433, 434); and one who acquires title to lands belonging to the United States, after an appropriation made, takes subject to the appropriation, and his riparian rights must yield to the rights of the appropriators. (*Osgood* v. *El Dorado etc. Min. Co.*, *supra; Himes* v. *Johnson*, 61 Cal. 259; *Ramelli* v. *Irish*, 96 Cal. 214; *Ware* v. *Walker*, 70 Cal. 591; *South Yuba etc. Co.* v. *Rosa*, 80 Cal. 333.) One who appropriates water for a useful purpose cannot be defeated in his right because he is not able to apply the whole amount of water to those uses at once. (*Kleinschmidt* v. *Greiser*, 14 Mont. 484; 43 Am. St. Rep. 652; *Low* v. *Rizor*, 25 Or. 551; Pomeroy's Riparian Rights, sec. 47; *Simmons* v. *Winters*, 21 Or. 35; 28 Am. St. Rep. 727; *Cole* v. *Logan*, 24 Or. 304.) Having made a valid appropriation, the defendants and their predecessors were not bound to continue to use it in the same place or for the same purpose (Civ. Code, sec. 1412; *Hargrave* v. *Cook*, 108 Cal. 72); and it was incumbent upon the plaintiffs to show that they were injured or had suffered some damage by the change of place of use. (*Jacob* v. *Lorenz*, 98 Cal. 340; *Ramelli* v. *Irish*, *supra; Gallagher* v. *Montecito Valley Water Co.*, 101 Cal. 242.) Plaintiffs could not acquire any rights by prescription, by merely using such water as flowed past defendant's dam and to plaintiff's ditch or flume. (*Hargrave* v. *Cook*, *supra; Faulkner* v. *Rondoni*, 104 Cal. 140.) Riparian rights do not extend to flood waters. (*Edgar* v. *Stevenson*, 70 Cal. 286.) The use by all of the parties has been under the law of appropriation, and the benefits accruing to plaintiffs under their riparian rights, after deducting rights by appropriation, are none at all, or so nearly nothing that the court would take no notice

of them. (*Modoc etc. Co.* v. *Booth*, 102 Cal. 151; *Vernon Irr. Co.* v. *Los Angeles*, 106 Cal. 237.)

HAYNES, C.—Action to quiet title to a water right. The defendants had judgment, and the plaintiffs appeal therefrom, and also from an order denying a new trial.

In 1883, J. D. Hines settled upon one hundred and sixty acres of public land through which a small mountain stream known as San Antonio creek flowed, and constructed a dam and ditch by which he diverted from said stream about seventy-nine inches of water, and discharged the same upon said land. No notice of said appropriation is shown to have been made, and its purpose, and the quantity of water appropriated, can only be determined from its subsequent use. That a valid appropriation may be so made, see *Wells* v. *Mantes*, 99 Cal. 583. The defendants claim under said appropriation.

Edwin Senior, one of the plaintiffs, in 1886 settled upon one hundred and sixty acres of public land below the Hines place, through which said stream also ran, and on October 29, 1887, posted a notice claiming to appropriate fifty inches of the water of said stream, measured under a four-inch pressure, and constructed a ditch to convey the same for use upon his said land.

J. D. Hines died in December, 1886, and Alice Hines obtained a patent for the land occupied by J. D. Hines in his lifetime, October 25, 1889, and Senior obtained a patent to his land October 30, 1890. The other plaintiffs are vendees of portions of Senior's land and water right.

The Hines ranch above mentioned was conveyed by Alice Hines to E. S. and W. L. Hall, August 21, 1888, together with the water right appurtenant thereto, and on June 15, 1889, the Halls conveyed said water right but not the land to the Ojai Valley Water Company, a corporation. The persons named as defendants are the members of an unincorporated association, or partnership, composed of the stockholders of said corporation,

to which association said corporation conveyed its water right, May 5, 1894. The agreement by which the association was formed divides the interest acquired into one thousand shares, being the same number of shares issued by the corporation, and the said agreement fixed the number of shares to which each member of the association was entitled. The corporation was thereupon dissolved.

The principal question is as to the sufficiency of the evidence to justify the sixteenth finding, which is as follows: "That J. D. Hines settled upon certain lands riparian to the said San Antonio creek, and above the lands of the plaintiffs in this action,.in 1883, and all the water flowing in the said San Antonio creek to and upon the lands of the said J. D. Hines in the said year 1883, and ever since, in the ordinary stages of the water, was necessary for uses upon the said lands so occupied by the said J. D. Hines for agricultural and domestic uses; and all of said water flowing in the said stream in ordinary stages, and to the amount of seventy-eight and seventy-seven one-hundredths inches, was diverted from the said stream by the said J. D. Hines and used upon the said lands until the death of the said J. D. Hines, and ever since."

Whatever water rights were acquired by Hines were acquired by appropriation. Senior's appropriation having been made prior to the acquisition of title by Alice Hines, no riparian rights attached to Hines' lands which could affect Senior's appropriation. Her patent was expressly made "subject to all accrued water rights"; and as the two appropriations above mentioned, whatever may be their respective quantities, equals or exceeds the entire flow of the stream during the irrigating season, the question of riparian rights does not arise in this controversy.

The evidence is quite clear that the capacity of the Hines ditch was practically the same in 1883 that it is now, and that during all the time since 1883 the water ran through it to its full capacity when there was suf-

ficient water in the stream to fill it, and when there was less that it was all diverted, except so much—a small quantity—as seeped through the dam by which the water was turned into the ditch. But that is by no means conclusive of the quantity of water appropriated, nor is it, without showing a useful purpose to which the water, or some of it, was applied, evidence of any appropriation. The purpose of the diversion and the use of the water diverted are the general tests of a valid appropriation as well as of the quantity appropriated. None of the water diverted by the Hines ditch was used upon any other than the Hines land until after the conveyance of the water right by the Halls to the corporation, which was nearly two years after the appropriation by Senior. The extent of the Hines appropriation is therefore not enlarged by the subsequent use of the water by the corporation upon other lands, but must be determined by the use upon the lands for which the water was appropriated.    .

The quantity of land cultivated and irrigated by Hines and his successors until the time of the trial is uncertain; but that no greater quantity of land was cultivated upon the Hines ranch at any time than was under cultivation at the time of the trial is clear, while the preponderance of the testimony is that it was formerly much less.

As to the quantity of land being irrigated upon the Hines ranch at the time of the trial, one of the defendants, W. L. Hall, who is in charge of that property, testified that, at that time, there were "thirty-nine acres in trees; no alfalfa"; and that "there are about two hundred acres being irrigated from the same stream now outside of the old Hines ranch." No witness put the quantity of land that is or has been irrigated upon the Hines ranch at more than forty to fifty acres. E. S. Hall, also a defendant, testified as follows: "I am son in law of Judge Hines, and took charge of the place after his death until August, 1888. When I took charge of it in 1887 the flumes and ditches were practically

what they are now. The ditch extended down past the house, and the water, after running off the Hines land, went down a little stream or ravine, but did not reach Senior's land again, but would reach the creek again about three miles below, if it did not sink into the sand or earth. The ditch and flume was kept in use continuously as it was possible. Judge Hines intended to hold the water and keep it, and he irrigated the hills for that purpose. He got domestic water from another stream. I do not know how much was irrigated in 1887. In the summer months all the water was turned into our flume, and only seepage would go down to Mr. Senior's flume." A little later, at folios 331, 332, this witness repeated the foregoing statement in almost the same words, including the statement that Hines "irrigated the hillsides for the purpose of holding the water."

Miguel Erro testified that he commenced to work for Judge Hines in 1883, and helped to construct the ditch and flume. That the land was cultivated "for alfalfa, for orange and lemon trees, and for barley." "It [the water] was taken north of the house, but afterward ran down the creek right by the house. . . . . When I said, in 1883 when the water ran through this ditch and flume it passed again into the stream, I mean the little creek where the house is. The water may return to San Antonio creek, but it would be way down."

George Stewart testified that it was hard to estimate how much Judge Hines had under cultivation. It was in patches; that he used to irrigate a great deal of it for pasturage; that he judged there were about fifty acres irrigated by Judge Hines altogether in 1885–86.

Mr. E. S. Hall, the present occupant of the Hines ranch, testified that it would take forty inches used all the time to irrigate the place properly; that "this year" he had twenty-five inches and would have been glad to have had more. There was no evidence tending to show that any portion of the Hines ranch other than that now irrigated is capable of irrigation, or that any larger quantity of water than that mentioned by E. S. Hall is,

or ever would be, required for the cultivation of all the irrigable land on that ranch. This fact, together with the further conceded fact that the water diverted by the Hines ditch is now used to irrigate from one hundred and eighty to two hundred acres of land outside of the Hines ranch, gives great force to the testimony of E. S. Hall, whose relation to Judge Hines gave him ample opportunity to-know the facts, that he irrigated the hillsides for the *purpose* of holding the water, and that water was permitted to flow off in the little stream or ravine which connected with San Antonio creek some three miles below. This evidence clearly shows that the quantity of water claimed by defendants under the Hines appropriation largely exceeds the quantity put to any useful purpose on the Hines ranch, and, therefore, exceeds the quantity actually appropriated. While the quantity of water appropriated for use upon the Hines land is the measure of the quantity appropriated by Hines, we do not hold that the water so appropriated may not be used upon other lands; but the fact that other lands may be, or are, irrigated from the Hines ditch does not affect the quantity of water appropriated. In *Atchison* v. *Peterson*, 20 Wall. 514, Justice Field, delivering the opinion, said: "The right to water by prior appropriation is limited in every case in quantity and quality by the uses for which the appropriation is made. A different use of the water subsequently does not affect the right; that is subject to the same limitations, whatever the use. The appropriation does not confer such an absolute right to the body of the water diverted that the owner can allow it, after its diversion, to run to waste and prevent others from using it for mining or other legitimate purposes." (See also the California cases there cited, and *Simmons* v. *Winters*, 21 Or. 35; 28 Am. St. Rep. 727; *Barnes* v. *Sabron*, 10 Nev. 243; *Hindman* v. *Rizor*, 21 Or. 112.)

We do not hold that the Hines appropriation is limited by the quantity of water he could put to a useful purpose upon his land the first or second year, but to

such quantity as he could put to a useful purpose upon his land within a reasonable time by the use of reasonable diligence. " To entitle the defendant, however, to the benefit of such an appropriation, he should, within a reasonable time, apply the water to such beneficial use. As fast as he could reasonably put his homestead into cultivation, he is entitled to divert and use the water for that purpose. The rule established in *Simmons* v. *Winters, supra,* is just and reasonable; but it is not intended that, because a prior appropriator is entitled to a given quantity of water necessary to irrigate the lands he intends to cultivate, he can suspend his improvements an unreasonable time, and then, by adding to the area of his cultivated land, be restored to his original intentional diversion, when subsequent appropriators have acquired rights upon the stream. The fact that he for an unreasonable time delays additional cultivation, should be construed into an abandonment of his original claim to divert a sufficient quantity to irrigate his whole tract, and his appropriation, after such unreasonable delay, should be confined to such necessary use as applied to the lands he had cultivated within a reasonable time." (*Cole* v. *Logan,* 24 Or. 304. See, also, *Simmons* v. *Winters, supra,* and *Barnes* v. *Sabron, supra.*) We think that the time elapsing after 1883 was ample to bring under cultivation all the land upon the Hines place intended for cultivation by the use of water, and the voluntary disposition by the present owner of the Hines land of so much of the water as is not now used thereon, for use upon the land of others, justifies the conclusion, upon the evidence before us, that the appropriation made by Hines should be restricted, as against the plaintiffs, to the quantity of water now reasonably necessary for the irrigation of the Hines land under cultivation when this action was commenced. We therefore conclude that said finding is not justified by the evidence, though it is immaterial to the plaintiffs where said quantity of water is used, and that the use of the water upon other lands is therefore a false quan-

tity in the problem as to the quantity appropriated by Hines, and whether that quantity has been increased must depend upon the question whether the right to a larger quantity has been acquired by an adverse use for the period of five years, the defense of the statute of limitations having been pleaded by the defendants.

The diversion through the Hines ditch of water not necessary for a useful purpose, for any length of time, would not give a right as against the plaintiffs, and, therefore, the application of the water to a beneficial purpose upon other lands by the defendants, or their predecessor in interest, the Ojai Valley Water Company, must mark the beginning of the adverse use.

These other lands never belonged to Hines, or to any owner of the Hines land, and the evidence is without conflict that no water was used except upon the Hines ranch until after the conveyance of the water right by the Halls to said corporation.

That conveyance was made June 15, 1889, and the complaint in this action was filed August 4, 1894. At what date the use of the water by the corporation upon the outside lands was commenced nowhere appears. Unless an adverse use commenced on or before August 4, 1889, no right was acquired by adverse user. It may be proper to add, in view of another trial, that the mere construction of ditches, or the laying of pipes for the purpose of using the water upon other lands outside of the Hines ranch, did not constitute such adverse user as would set the statute in motion, since no right could be acquired adversely to Senior otherwise than by the actual use of the water. Besides, whatever right to the water Hines or his successors in interest in the Hines ranch acquired—and, as we have seen, some right was acquired—was conveyed by the Halls to the corporation; there was, therefore, some water which the corporation had the right to conduct to said outside lands, and the construction of ditches, therefore, could not be notice to Senior of any adverse claim to the water, for, in the absence of the statutory notice, an appropriation of

water can only be made by its actual diversion and use. The Halls, in their conveyance to the corporation, reserved all riparian rights attaching to their lands, but did not reserve any right to the water acquired under the Hines appropriation; and all the right they have since had to water upon the Hines ranch was acquired by them as stockholders in the corporation, or as shareholders in the association known as the San Antonio Water Company. Indeed, at the time of their conveyance of the water right to the corporation, no riparian rights existed, the title to said lands being still in the United States; and no subsequent riparian rights could exist, affecting either the Hines or the Senior appropriation, such prior accrued rights being expressly reserved in the patents.

Plaintiffs further alleged in their complaint that a certain compromise agreement was made between them and the said corporation, by which Senior was to convey to the corporation whatever rights he had as an appropriator and riparian proprietor, and turn into the flume of the corporation all the water coming into his ditch, the corporation, on its part, to turn out to Senior and his grantees one-tenth of all the water in their flume, or which might thereafter, by development or otherwise, be caused to flow therein, and would also secure to plaintiffs the right of way for pipes or ditches to convey said water to plaintiffs' land across the intervening private lands; and plaintiffs, while asserting their rights as riparian proprietors, and also under Senior's appropriation, prayed for a specific performance of said compromise agreement.

A proposition covering the ground above stated was made in a letter written by Mr. Hall, then president of the corporation, to Mr. Senior, but it was qualified so as to express what he was personally willing to do, and would advise the corporation to accept. A connection of the Senior ditch was in fact made in accordance with said proposition, and Hall turned out from the flume of the corporation approximately that proportion of the

water for Senior's use.    This was about April, 1892, and
the water so turned out continued to flow to Senior from
that time until the time of the trial.    Senior and his
co-plaintiffs prepared and executed a deed for the pur-
pose of consummating this compromise, and deeds were
prepared at the instance of Hall for the conveyance of
said right of way to the plaintiffs, but no deeds were
ever delivered, though plaintiffs notified Hall that their
deed was executed and ready for delivery.    A large part
of the evidence in the case was directed to this question,
from which it appeared that the change was made, and
plaintiff's use of the water from defendant's flume for
two years, was with the knowledge of most, if not all, of
the directors and stockholders of the corporation and its
successor, the San Antonio Water Company.    Mr. Hall
testified that the connection was made with the com-
pany's flume for experimental purposes, and the matter
was not consummated because the corporation would
not agree to the compromise, and the court so found.

Touching this finding, which is also attacked by ap-
pellants, it need only be said that while much of the
evidence seems wholly inconsistent with defendant's
claim that it was not agreed to, the conflict in the evi-
dence would not justify us in disturbing the finding,
especially in view of the well-settled doctrine that to
justify the specific performance of a contract, the fact
of the existence of the contract must clearly appear, and
that where part performance of an oral contract is relied
upon, such part performance must be clearly attributa-
ble to the contract sought to be enforced.    Upon plain-
tiffs being notified to disconnect their flume from that
of the defendant, this action was commenced.

The complaint alleged that the individuals named as
defendants are copartners under the name of the San
Antonio Water Company, and the court found that the
defendants are the owners of the water rights formerly
pertaining to the Ojai Valley Water Company, but not
as copartners; and this finding is also attacked.    The
question whether the defendants are copartners, or are

a voluntary association, or whether they hold whatever rights they may have as individuals, is immaterial. They claim from the same source, and the water used by them is diverted by the same ditch, and their claims of right, whether several or united in the use of the water, affect the right of the plaintiffs, and they are therefore, even if their rights or claims are asserted as individuals, properly joined as parties defendant in the action to quiet the title of the plaintiffs. Whether the action might have been prosecuted against the association without naming the persons composing it, under section 388 of the Code of Civil Procedure, need not be considered.

The judgment and order appealed from should be reversed and a new trial granted.

Belcher, C., and Britt, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are reversed and a new trial granted.

Temple, J., Henshaw, J., Harrison, J., Van Fleet, J.

McFarland, J., dissenting.—I dissent. The action was tried without a jury, and the court made very full findings. Judgment went for defendants, from which, and also from an order denying their motion for a new trial, plaintiffs appeal.

The action may be called, generally, I suppose, an action to quiet plaintiffs' title to certain waters of a stream called San Antonio creek; but it is exceedingly difficult to tell from the complaint what the particular right is which plaintiffs seek to have declared, or what the particular wrong is of which they complain. It would have been much better if the court had sustained the demurrer to the complaint, at least upon the grounds of ambiguity, uncertainty, and improper joining of causes of action. The complaint could then have been amended so as to have shown clearly what the plaintiffs' asserted right was. The only exceptions presented by the record

are to the insufficiency of the evidence to sustain the various findings; and, of course, these exceptions are subject to the rule that a finding must be sustained when there is substantially conflicting evidence respecting it.

The complaint and the prayer show that the main foundation of plaintiffs' asserted rights is a certain contract alleged to have been made between the plaintiffs and the defendants touching the right of the plaintiffs to tap and make connections with a certain ditch of defendants, and to take water from it at the point of connection. But the court found that there never was such a contract; and it is sufficient to say that the evidence fully warrants that finding.

It is clear beyond all question that, in 1883, one J. D. Hines settled upon certain United States public lands lying on and near said San Antonio creek, and, in that year, constructed a ditch at a certain point on said creek, and through said ditch diverted the water of said creek to the extent of seventy-eight and seventy-seven one-hundredths inches, and carried the same to the lands upon which he had settled; that the defendants are the successors in interest of said Hines to said ditch and water right; and that from said 1883 to August 4, 1894, when this suit was commenced, said Hines and his successors in interest, including these defendants, have continuously, notoriously, and adversely to all the world, continued, without interruption, to divert, through said ditch on to said lands, all the water of said creek when said water was not greater in amount than seventy-eight and seventy-seven one-hundredths inches. Several years after said 1883, to wit, 1886, one of the plaintiffs, Edwin Senior, also settled upon a tract of public land on and near said creek, and, on the 3d of November, 1887, he posted a notice on said creek, about one mile below the head of the ditch of defendants above described, stating that he claimed the water there flowing to the extent of fifty inches, and intended to divert the same by a ditch, flume, etc., and in due time constructed

a ditch, and in said ditch did divert from the stream, at divers times, such water as was flowing therein, at the point of said diversion, for use upon his said land.

The court found that "when the waters of the said stream flowing to defendant's dam and ditch, as hereinafter mentioned, was less than seventy-eight and seventy-seven one-hundredths inches of water, the said plaintiffs did not divert any water from the said stream, except such small quantity as might seep under the defendant's dam, or through the banks of the stream below the dam of defendants." The court also found "that J. D. Hines settled upon certain lands riparian to the said Antonio creek, and above the lands of the plaintiffs in this action in 1883, and all the water flowing in said Antonio creek to and upon the lands of said J. D. Hines in the said year 1883, and ever since, in the ordinary stages of the water, was necessary for uses upon the said lands so occupied by the said J. D. Hines for agricultural and domestic purposes; and all the said water flowing in said stream in ordinary stages, and to the amount of seventy-eight and seventy-seven one-hundredths inches, was diverted from the said stream by the said J. D. Hines, and used upon the said lands until the death of said J. D. Hines, and ever since." Also: "The court further finds that the said J. D. Hines and his successors in interest have diverted the waters of said Antonio creek to the extent of seventy-eight and seventy-seven one-hundredths inches, measured under a four-inch pressure, and have used the same for agricultural and domestic purposes ever since the year 1883, so long and during every portion of each year when that amount of water was flowing therein; and when less than said seventy-eight and seventy-seven one-hundredths inches, measured under a four-inch pressure, was flowing in said stream at or above the dam where the same was constructed by the said J. D. Hines in 1883, then the said J. D. Hines and his successors in interest diverted and used the whole of the said water, and such use has been open, notorious, and adverse, and under a claim of

right, peaceable, continuous, and uninterrupted, until
the commencement of this action."

It is contended by appellants that the foregoing find-
ings are not supported by the evidence. This conten-
tion, however, in my opinion, cannot be maintained.

As to the actual, continuous, notorious diversion of
the amount of water above named, from 1883 to the com-
mencement of the action in 1894, there is no question
or doubt whatever. The whole point of appellants'
contention in this matter is that, during the earlier
years of Hines' possession of this ditch and water, he did
not apply the whole of it to a beneficial purpose—that
is, that he did not actually use the whole of it in irriga-
ting his land. The point made is that an appropriation
of water must be for a beneficial purpose, and that the
whole of the water carried by the ditch was not used.
No doubt the rule is that there cannot be a valid ap-
propriation of water where the intent is merely to allow
it to run to waste.

Mr. Pomeroy correctly states the rule as follows: "In
order to make a valid appropriation of water upon the
public domain, and to obtain an exclusive right to the
water thereby, the appropriation must be made with a
*bona fide* present intention of applying the water to some
immediate, useful, or beneficial purpose, or in present
*bona fide* contemplation of a future application of it to
such a purpose by the parties thus appropriating it."
In looking through the evidence it seems to me that the
court was fully justified in finding that the appropria-
tion by Hines was within the principle above announced.
The present defendants became owners of the Hines
ditch and water right more than five years before the
commencement of this suit; and there is no doubt that
they, for some years before the commencement of the
suit, actually used the whole of this water for a benefi-
cial purpose. And, while there is some conflict in the
evidence as to how much water Hines used during the
first years of his occupancy of the land, there is suffi-
cient upon that point to justify the finding of the court.

Where, as in this case, there has been, beyond a doubt a continuous, actual diversion of water through a ditch, and that water has been used generally for a beneficial purpose for a period more than twice as long as the period of limitation, it would be a dangerous thing, in my opinion, to upset a right thus so long exercised, upon slight evidence that the whole of the water was not continuously used. Title to valuable property should not thus be hazarded. And where in such a case, a trial court or jury has found that the appropriation was for a beneficial purpose, we would not be warranted in overturning such finding, unless the evidence supporting it was "slight" in an extreme sense. In the present case I see no reason for disturbing the finding.

There are no other features of the case necessary to be specially noticed, and, in my judgment, the conclusions of the court below should not be disturbed.

Rehearing denied.