(March 3, 1915.)

## WASHINGTON STATE SUGAR COMPANY, Appellant, v. JACOB GOODRICH et al., Respondents.

[147 Pac. 1073.]

Water Right Permits — Water Right Claims — Powers of State Engineer—Forfeiture of Right—Actual Appropriation by Use—Compliance With Statute — Vested Rights — Action to Quiet Title — Necessary Parties — Change in Point of Diversion — Change from Purpose for Which Appropriated—Use is Measure of Right—Duty of Water—What Decree Should Contain.

1.   Where a permit to appropriate water for a beneficial use is granted by the state engineer, a total failure to commence the work within the time provided in the permit, or to complete one-fifth of the work within the time limited in the permit, cannot be cured by extending the time within which to make proof of beneficial use of the water so attempted to be appropriated.

2.   A water right claim, as filed with the state engineer, is merely a declaration of intention to create a water right.   Only by a compliance with the conditions of the permit does the water right claim finally become a water right.

3.   Where one obtains a permit for the appropriation of water from the state engineer, a failure to put the water to a beneficial use or to comply with the conditions of the permit is an abandonment of the use.

4.   One may obtain a prior right to the use of the water of a stream where he actually diverts and applies the same to a beneficial

use, although he may never have applied to the state engineer for a permit to do so.   (*Nielson v. Parker,* 19 Ida. 727, 115 Pac. 488, cited and followed.)

5.   The granting by the state engineer of a permit for the right to use the waters of a stream, in and of itself, secures to the applicant no right to the use of such water, unless there be a substantial compliance with every provision of the statute affecting the issuance of such permit and a fulfillment of the conditions of the permit; a compliance with the conditions and limitations prescribed in the permit initiates a right to the use of the water in the applicant, and said right then becomes a vested one and dates back to the issuance of said permit.

6.   A right to the use of water obtained by actual diversion and application to a beneficial use is a vested right, and cannot be defeated by the subsequent issuance by the state engineer of a permit to appropriate such water, granted to another party than the prior appropriator.

7.   Where suit is brought by an aggrieved party to review the decision of the state engineer in lieu of an appeal from the proceedings had before said engineer, the action is in the nature of a suit to quiet title, and must be prosecuted and conducted in the same manner as an action to quiet title to real estate, and all parties whose claims are adverse to the plaintiffs, whether they appear before the state engineer or not, are indispensable parties and must be made defendants in the action.

8.   Where an application to appropriate water has been made under sec. 3253, Rev. Codes, as amended by Sess. Laws 1913, p. 136, and a permit granted, and the applicant thereafter desires to change the point of diversion, he must substantially comply with the provisions of said sec. 3264, Rev. Codes.

9.   The state engineer has no authority to make any change in the point of diversion specified in his permit to appropriate that would in any way interfere with the rights of prior appropriators.

10.   In an action to quiet title, plaintiff will not be permitted to rely upon the weakness of defendant's title in order to establish a better title in himself, but if he is entitled to recover at all, it must be upon the strength of his own title.

11.   The test of an appropriator's right to water for irrigation is the amount of water actually used for the beneficial purpose claimed.

12.   Where one appropriates water for the operation of a sawmill and thereafter appropriations are made from the same stream by several parties for irrigation purposes, the first appropriator cannot transfer his appropriation to another to be used for irrigation

purposes and thereby defeat the rights of subsequent appropriators for purposes of irrigation.

13. The duty of water depends upon the character and condition of soil, and in determining such duty reference should always be made to lands that have been properly prepared and reduced to a reasonably good condition for irrigation.

14. *Held,* that certain findings of the court were sustained by the evidence.

15. An appropriator of water, after conducting the same to the point of intended use, has a reasonable time in which to apply such water to the use intended, but where the question of proof of such use arises, such appropriator cannot be permitted to anticipate what he might do in the future, or to make additional proof of further application to a beneficial use at a future time.

16. *Held,* that the decree of the lower court must be modified in regard to the amounts of water decreed certain appropriators.

17. In an action to quiet title to water appropriated from a public stream, where the issue joined is one of priority, the court should find the actual appropriation made by each appropriator, the date upon which the appropriation was made and the quantity of water appropriated to a beneficial use by each.

·APPEAL from the District Court of the Eighth Judicial District, in and for the County of Kootenai. Hon. R. N. Dunn, Judge.

Action to quiet title to certain water rights in Lewellyn creek. Decree of the lower court modified.

Allen & Allen and Chas. L. Heitman, for Appellant.

The appropriator is not even entitled to the quantity actu· ally diverted and taken into possession, if he uses only a portion of it; his right is limited to the amount so actually used. (Wiel on Waters, sec. 168; *Van Camp v. Emery,* 13 Ida. 202, 89 Pac. 752; *Trimble v. Hellar,* 23 Cal. App. 436, 138 Pac. 376.)

An appropriator of water for irrigation purposes has no more than a reasonable time in which to apply water to his land, after conducting it to the point of intended use. (*Bennet v. Nourse,* 22 Ida. 249, 125 Pac. 1038; *Kirk v. Bartholomew,* 3 Ida. 367, 29 Pac. 40; *Joyce v. Rubin,* 23 Ida. 296,

130 Pac. 793; *Snow v. Abalos* (N. M.), 140 Pac. 1044; *Trimble v. Hellar, supra.*)

It is well settled that one cannot appropriate merely water enough to irrigate a garden patch and then claim water enough to irrigate a farm. (Wiel on Water Rights, 2d ed., sec. 170; *San Luis Water Co. v. Estrada,* 117 Cal. 168, 48 Pac. 1075; *Conroy v. Huffine,* 48 Mont. 437, 138 Pac. 1094.)

The test being the amount of water actually used by him for a beneficial purpose. (*Hufford v. Dye,* 162 Cal. 147, 121 Pac. 400; *Trimble v. Hellar, supra; Hewitt v. Storey,* 64 Fed. 510, 12 C. C. A. 250, 30 L. R. A. 265.)

If respondents attempt to base their claims upon the appropriation and actual application of water to beneficial uses on the part of Hall, Goodrich and Brown, then the amount of water to which respondents are entitled is the amount which they were using at the date of their last act of appropriation and use, at the time when appellant's rights became vested. (*Morris v. Bean,* 146 Fed. 423; *Pyke v. Burnside,* 8 Ida. 487, 69 Pac. 477.) The largest duty and the greatest use must be had from every inch of water in the interest of agriculture and the building of homes. (*Van Camp v. Emery,* 13 Ida. 202, 89 Pac. 752; *Niday v. Barker,* 16 Ida. 73, 101 Pac. 254.)

The question to be determined in such cases is the amount actually necessary for the useful or beneficial purpose to which the water is to be applied. (*Farmers' etc. Ditch Co. v. Riverside Irr. Co.,* 16 Ida. 525, 102 Pac. 481.) And reference should always be had to lands that have been prepared and reduced to a reasonably good condition for irrigation. (*Kirk v. Bartholomew,* 3 Ida. 367, 29 Pac. 40; *Geertson v. Barrack,* 3 Ida. 344, 29 Pac. 42.)

"Water is too precious in this arid climate to permit its being unnecessarily wasted." (*Roeder v. Stein,* 23 Nev. 92, 42 Pac. 867; *Burkhart v. Meiberg,* 37 Colo. 187, 119 Am. St. 279, 86 Pac. 98, 6 L. R. A., N. S., 1104; Wiel on Water Rights 2d ed., pp. 265, 266.)

The place of use can be changed provided no injury be done to others. (*Bennett v. Nourse, supra.*)

After ten years from the diversion, it will be presumed that the appropriator has cleared all the land he intended to irrigate. (*Senior v. Anderson,* 115 Cal. 496, 47 Pac. 454.)

A cessation of the use by the appropriator works a forfeiture of his right, where there is a failure to make any beneficial use of the water for a period of more than five years, and, in such case, a subsequent appropriator for a beneficial use acquires a right to the water. (*Smith v. Hawkins,* 110 Cal. 122, 42 Pac. 453.)

Under the pleadings the court should have determined the date of each appropriation through which the several parties claim their rights, the amount of water appropriated and applied by each party for useful or beneficial purposes, and ordered judgment to be entered accordingly. (*Geertson v. Barrack,* 3 Ida. 347, 29 Pac. 42; *Kirk v. Bartholomew,* 3 Ida. 367, 29 Pac. 40; *Brown v. Macey,* 13 Ida. 451, 90 Pac. 339; *Lee v. Hanford,* 21 Ida. 327, 121 Pac. 558; *Hufford v. Dye,* 162 Cal. 147, 121 Pac. 400.)

McBee and Beggs had acquired vested rights, and at the time they acquired these rights, there was no statute imposing a penalty of forfeiture, or otherwise, for a failure to commence the work within the time prescribed in the permits, and no subsequent statute imposing such a penalty could interfere with these vested rights, even if made retrospective. (*Nielson v. Parker,* 19 Ida. 724, 115 Pac. 488; *Gard v. Thompson,* 21 Ida. 485, 123 Pac. 497; *Richmond Min. Co. v. Rose,* 114 U. S. 576, 5 Sup. Ct. 1055, 29 L. ed. 273.)

Black & Wernette, for Respondents.

Plaintiff must rely upon its own title in its action to quiet title and not upon the weakness of respondent's title. (*Winter v. McMillan,* 87 Cal. 256, 22 Am. St. 243, 25 Pac. 407; *Robinson v. Muir,* 151 Cal. 118, 90 Pac. 521.)

The junior appropriator has a vested right in the continuance of the conditions that existed on the stream at and subsequent to the time he made his appropriation, unless the

change can be made without injury to such right.  (*Vogel v. Minnesota Canal Co.,* 47 Colo. 534, 107 Pac. 1108.)

One who asserts the right to a change in the place of diversion has the burden of proving that the change will not injuriously affect the vested rights of others.  (*Farmers' High Line Canal & Reservoir Co. v. Wolf,* 23 Colo. App. 570, 131 Pac. 294; *Fort Line Canal Co. v. Chew,* 33 Colo. 392, 81 Pac. 37; *New Cache La Poudre Irr. Co. v. Water Supply & S. Co.,* 49 Colo. 1, 111 Pac. 610; *Bowman v. Virdin,* 40 Colo. 247, 90 Pac. 506.)

The appropriator, if he actually diverts the amount of water claimed in his water notice and appropriations, and conducts the same to the lands on which the water was to be used, can have a reasonable length of time, under all the circumstances of his particular case, in which to apply the water to a beneficial use.  (Wiel on Water Rights, 3d ed., sec. 483; *Conant v. Jones,* 3 Ida. 606, 32 Pac. 250; *Hall v. Blackman,* 8 Ida. 272, 68 Pac. 19; *Brown v. Newell,* 12 Ida. 166, 85 Pac. 385.)

BUDGE, J.—This is an action brought in the district court of the eighth judicial district for the county of Kootenai, to quiet title to the waters of Lewellyn creek, a small stream rising in the mountains east of the lands now owned and in the possession of appellant and respondents, in this action.

Appellant owns a farm of 2,000 acres, situated about five miles from the point of diversion of appellant company's ditch on Lewellyn creek.  When this action was commenced, a considerable portion of this land was in a high state of cultivation.  It is arid in character and requires irrigation for its successful cultivation.  These lands were partially irrigated from a stream known as Sage creek, not in controversy in this action.  Into this creek appellant undertook to convey the waters of Lewellyn creek by means of a ditch, the intake of which is located at or near what is known as Roush's sawmill.

On November 11, 1899, J. C. Roush, by written notice, appropriated and claimed 100 cubic feet of water per second of

time of the waters of Lewellyn creek.   On June 4, 1906, and on July 15, 1907, upon application duly made, the state engineer issued and subsequently approved permit No. 2158 to Edwin McBee and permit No. 2978 to S. E. Beggs, for 25 and 9.6 cubic feet of water per second of time, respectively. On May 17, 1907, McBee assigned to Beggs all his right, title and interest to the use of the waters of Lewellyn creek, under permit No. 2158, and Beggs, thereafter, on September 14, 1908, conveyed the same to the appellant herein, on which date he also transferred to appellant the right to the use of the waters of Lewellyn creek under permit No. 2978; records of which transfers were made in the office of the state engineer, on July 21, 1910.   On September 23, 1908, J. C. Roush, by a written conveyance, transferred to appellant all right, title and interest claimed under his appropriation to the waters of Lewellyn creek.

During the month of October, 1908, and subsequent to the date of the purchase of the aforementioned rights to the use of the waters of Lewellyn creek, appellant commenced the construction of the Corbin ditch and flume and prosecuted the work to completion during 1910, or 1911.

Lewellyn creek, from the intake of appellant's canal, runs in a westerly direction through the lands of the respondents, who claim the right to the use of the waters of said creek by reason of the construction of a ditch, known as the Hall-Goodrich ditch, in 1894, diverting the water of said stream to and upon their respective lands, and also by the posting of water location notices and causing the same to be recorded in the county recorder's office of Kootenai county.   This diversion and use, as well as the posting and filing of notices of appropriation of the waters of Lewellyn creek, respondents contend was prior to the right, if any, of the appellant and its predecessors.

Lewellyn creek takes its name from Americus Lewellyn, who was the first pioneer to settle in that locality.   It is contended that Jacob Goodrich and D. C. Hall located on Lewellyn creek in 1891, and that Goodrich constructed a ditch and

diverted the water to his home for domestic purposes; that in 1894 Hall constructed a ditch connecting with the west end of the Goodrich ditch and carried the water on to his place. This ditch, therefore, became known as the Hall, or the Hall-Goodrich ditch, through which respondents have conducted water for the irrigation of portions of their respective lands. The date of the construction of the ditch, the size of the ditch when constructed, the date of the enlargement of the ditch, its fall and capacity, as well as the actual date of appropriation of the water of the Lewellyn creek and its use by the respective respondents and their predecessors in interest, together with amount of water put to a beneficial use and necessary for the proper irrigation of the lands of the respondents, and the area of lands irrigated by each of the respondents and their predecessors in interest, are involved in this litigation.

The record in this case is voluminous. Appellant's counsel makes twenty-five assignments of error, a number of which are subdivided. We shall not attempt to discuss separately each assignment of error upon which appellant relies for a reversal of the judgment. Appellant bases its right to the use of waters of Lewellyn creek, upon permits Nos. 2158 and 2978; also upon J. C. Roush's appropriation. Permit No. 2978, application of Beggs for 9.6 cubic feet per second of time, of the waters of Lewellyn creek, contains necessary information required under the statutes, describing the lands to be irrigated, the quantity of water claimed, estimated cost of work, description of works for diversion, time required for the completion of the construction of the work and the approval of the state engineer, which permit when approved, was subject to the following limitations and conditions, to wit: "Work to begin on or before October 9th, 1907 and to continue diligently and uninterruptedly to completion, . . . . one-fifth of the work above specified to be completed on or before February 10, 1909. The whole of said work to be completed on or before August 10, 1910. The time for proof

of beneficial use of water appropriated in accordance herewith, to extend to August 10, 1913.'' Permit No. 2158, which is McBee's application to appropriate 25 cubic feet per second of time of the waters of Lewellyn creek, contains the same conditions and limitations set out in permit No. 2978 and has indorsed thereon the approval of the state engineer on July 28, 1906, and provides that one-fifth of the work specified in the permit shall be completed on or before January 28, 1909; the whole of said work to be completed on or before July 28, 1911. The time for making proof of beneficial use of the water attempted to be appropriated was extended to July 28, 1915.

A comparison of the description of the land to be irrigated as described in the aforesaid permits and the land set out in the appellant's complaint, as owned and sought to be irrigated by appellant, establishes the fact that they are not the same, but entirely different lands.

Sec. 3254, Rev. Codes, as amended by Sess. Laws 1905, p. 361, sec. 2, provides: ''Every holder of a permit which shall be issued under the terms and conditions of an application filed hereafter appropriating 25 cubic feet or less per second, must, within 60 days from the date upon which said permit issues from the office of the state engineer, commence the excavation or construction of the works by which he intends to divert the water, and must prosecute the work diligently and uninterruptedly to completion, unless temporarily interrupted through no fault of the holder of such permit by circumstances over which he has no control. . . . .

''The holder of any permit who shall fail to comply with the provisions of this section within the time or times specified shall be deemed to have abandoned all right under his permit.'' Sec. 3257 Rev. Codes, as amended by Sess. Laws, 1913, p. 509, provides: ''On or before the date set for the completion of works for the diversion and application of water under any permit, the holder of such permit, or his assigns, shall be prepared to submit proof of the completion of such works to the state engineer. Such holder of such permit shall first

notify the state engineer that he is prepared to submit such proof of completion of such works.''

It will be seen from an inspection of the McBee and Beggs permits, Nos. 2158 and 2978, respectively, that in the former, one-fifth of the work was to be completed on or before January 28, 1909, the whole of said work to be completed on or before July 28, 1911, and in the latter, one-fifth of the work was to be completed on or before February 10, 1909, and the whole of said work to be completed on or before August 10, 1910. There is no evidence in the record that work was commenced under the McBee and Beggs permits, within sixty days from the date upon which the permits were issued from the office of the state engineer, or that one-fifth of the work specified in said permits and required to be done by the state engineer was done, or that the whole of said work was completed on or before July 28, 1911, and August 10, 1910, as provided in said permits. Neither was there any testimony offered as an excuse for any interruptions with said work under circumstances over which the holder of the permit had no control. Under the McBee permit, proof of the completion of the work should have been made practically two years prior to the commencement of this action, and under the Beggs permit, proof of the completion of the work should have been made approximately three years prior to the commencement of this suit.

The evidence is conclusive that neither McBee nor Beggs, at any time subsequent to the date of the issuance of the permits, even attempted to comply with the conditions therein contained. If there was a compliance with any of the conditions of said permit, it was by appellant when it began the construction of the Corbin ditch and flume connecting the waters of Lewellyn creek with the waters of Sage creek in the month of October, 1908, and this alleged compliance was upon the theory that the statutes, at the time of the issuance of the permit, did not provide a forfeiture by operation of law, until the time fixed in said permit for the submission of proof of beneficial use of the waters appropriated, which time, under

permit No. 2158, was extended to July 28, 1915, and under permit No. 2978, to August 10, 1913. A total failure, however, to commence the work within the time specified in the permit, or to complete one-fifth of the work within the time limited in the permit, would not be cured by extending the time within which to make proof of the beneficial use of the water so attempted to be appropriated.

The state is the sovereign owner of the right to appropriate and use all of the stream waters which are within the jurisdiction of the state. The state, by enactment of appropriate laws, permits private persons to use its right to appropriate and use the flow of stream water. A water right claim is not a water right. A water right claim is a declaration of intention made in a written form prescribed by statute to give public notice of intention to create water rights identical with descriptions stated in the writing, commonly referred to as a water right. Although they are not, water right claims have become commonly regarded as being the same thing as water rights. One is a mere declaration of intention to create a water right which may never be anything more than an intention. By a compliance with conditions of the permit, the water right claim then becomes a water right. The statute may permit an appropriator to change any or all of the conditions contained in the declaration of intention, except the particular stream from which the diversion is intended to be made, but it could not be successfully maintained that a subsequent appropriator's right to the use of the waters of a stream should be impaired by a change in the declaration of intention to appropriate by the act of the party, or with the consent of the state engineer, or to change the point of diversion. The extent of the permit of the state is measured by the use of the water under the conditions and limitations of the permit. A failure to put the water to a beneficial use or to comply with the conditions of the permit, is an abandonment of the use, and this would be true whether or not there was a statute containing such a provision.

There is another reason equally tenable, that might be urged against the validity of the appropriation attempted to be made

under said permits, which would estop the appellant from asserting a prior right to the use of the waters of Lewellyn creek as against the respondents: Prior to the commencement of the construction of the Corbin ditch, A. J. Shaw, an agent of the appellant company, and Albert Allen, an attorney for said company, traversed the entire length of Lewellyn creek and made an inspection of the Hall-Goodrich ditch, as well as the various laterals leading from said ditch, to and upon the lands of the respondents, made measurements of the size and capacity of said ditches and the waters flowing therein, and further familiarized themselves with the conditions along said Lewellyn creek and the lands that were then being irrigated by means of these ditches. At the time of said investigation, respondents were residing upon their homesteads, the lands upon which they and their predecessors had lived since about the year 1893, approximately fifteen years prior to the commencement of the construction of the Corbin ditch and canal by appellant. The Goodrich ditch was constructed, as appears from the record, about the year 1889, from the Lewellyn creek down to the lands of some of the respondents. The Hall ditch was constructed not later than 1893, or 1894. The water of said Lewellyn creek was taken down through the Hall-Goodrich ditch to lands now owned by the respondents and used upon the same. On June 19, 1897, Hall recorded with the county recorder of Kootenai county, his notice of appropriation of three cubic feet of water per second of time of the water of Lewellyn creek, and on December 31, 1900, Goodrich and Brown recorded with said county recorder their notice of appropriation, claiming twenty cubic feet per second of time. The evidence, therefore, stands uncontradicted that there had been an actual application of the waters of Lewellyn creek to the lands of the respondents and their predecessors, of which fact appellant had, by reason of the inspection made by its agent and attorney, actual notice prior to the commencement of the construction of the Corbin canal and a record notice of the appropriation of twenty-three cubic feet of the waters of Lewellyn creek by respondents and their pre-

decessors, prior to the issuance of either the McBee or Beggs permits by the state engineer.

We think the facts in this case justify the application of the principle of law announced in the case of *Nielson v. Parker,* 19 Ida. 727, 115 Pac. 488: "Where one actually diverts the water of a stream and applies the same to a beneficial use in the irrigation of his growing crops, although he has never applied to the state engineer for a permit to do so; and has never procured either a permit or a license from the state engineer, still his right is superior and paramount to any right that a subsequent appropriator can procure, even though the latter secures a permit from the state engineer to appropriate and divert the waters of the stream."

The granting by the state engineer of a permit for the right to use the waters of this state, in and of itself secures to the applicant no right to the use of the waters applied for in said permit, unless there be a substantial compliance with each and every provision of the statute relating to or in any manner affecting the issuance of such permit and a fulfillment of the conditions and limitations therein, but a compliance with the conditions and limitations prescribed in such permit initiates a right to the use of the water in the applicant, and said right then becomes a vested one and dates back to the issuance of said permit.

A right, by actual diversion and application of the water of a stream, prior to the issuance of a permit by the state engineer, is a vested one, and cannot be defeated by the subsequent issuance to an applicant, by said state engineer, of a permit for the waters so diverted and put to a beneficial use, or, if it appears that the conditions and limitations of the permit and the statutes governing the issuance of the same, have not been substantially complied with in the diligent prosecution and completion of the work within the time and manner provided by law, and vested rights have accrued by actual diversion and appropriation to a beneficial use of the water attempted to be appropriated under the permit, the actual diversion and application to a beneficial use, entitles the appropriator to a prior right.

Sec. 3256, Rev. Codes, as amended by Sess. Laws 1909, p. 300, provides: "If the holder of a permit to appropriate the public waters shall fail to comply with the requirements of his permit as to the commencing of work . . . . or the completion of one-fifth (1/5) of the construction work within one-half (1/2) the time allowed for the entire completion of such construction work, or shall fail to complete the entire construction work within the time specified in his permit, said permit may be canceled and voided by the state engineer as hereinafter provided at the instance of any person or persons holding any permit for the diversion of water from the same stream."

It appears from the record in this case that on November 3, 1910, due notice of contest was issued out of the office of the state engineer as provided by sec. 3256, *supra*, directed against McBee, Beggs and the Washington State Sugar Co., notifying them, and each of them, to appear in the office of said state engineer on January 3, 1911, to show cause by affidavit, if any there be, why permits Nos. 2978 and 2158 should not be canceled for a failure to comply with the provisions of said permits; that thereafter, upon a hearing had, it was made to appear to the satisfaction of the state engineer that the terms and conditions of said permits had not been complied with. Thereupon an order was duly made on January 9, 1911, canceling and voiding said permits, from which order no appeal was prosecuted to the district court, or action commenced in said district court in the county where the water was located, to determine the question involved in the proceedings had before the state engineer, as provided under sec. 3256, *supra*, wherein the respondents to this action were made parties.

Where suit is brought by an aggrieved party to review the decision of the state engineer in lieu of an appeal from the proceedings had before said engineer, the action is in the nature of a suit to quiet title, and must be prosecuted and conducted in the same manner as an action to quiet title to real estate, and all parties whose claims are adverse to the plaintiffs, whether they appear before the state engineer or

not, are indispensable parties, and must be made defendants in the action; otherwise a judgment rendered in the district court would not be binding upon adverse claimants, and they would in no way be affected by the proceedings had either before the state engineer or in the district court.

From the record in this case it is clear to our minds that no right was initiated under the McBee or Beggs permits; that the statutes governing the issuance of said permit, as well as the conditions and limitations therein prescribed, were not substantially complied with, either by the appellant or its predecessors, and that the order made by the state engineer on January 9, 1911, canceling permits Nos. 2153 and 2978 was a valid one. Appellant insists that it has a right to change the point of diversion under permits Nos. 2158 and 2978 and also the Roush appropriation. Sec. 3247, Rev. Codes, provides: "The person entitled to the use of water may change the place of diversion, if others are not injured by such change." This section is not in conflict with sec. 3264, which provides, among other things: "That any person owning any land to which water has been made appurtenant either by decree of the court or under the provisions of this chapter [chapter 2, title 9] . . . . desiring to change the place of use of such water shall first make application to the state engineer, stating fully in such application the reasons for making such transfer." Such application shall describe the land to be irrigated from the point of diversion different from the one described in the license or permit. Where an application to appropriate water was made under sec. 3253, Rev. Codes (either prior or subsequent to the amendment of said section by Sess. Laws 1913, p. 136), and a permit granted, and the applicant thereafter desires to change the point of diversion, in order to do so it is necessary that a substantial compliance be made with said sec. 3264, *supra,* and unless that statute is complied with, no change can be made. Where one secures a permit under chapter 2, title 9, Rev. Codes, and appropriates water under said permit, it is a statutory appropriation, and any change in the point of diversion is governed by the provisions of the statutes.

In the case of *Farmers' High Line Canal & Reservoir Co. v. Wolf,* 23 Colo. App. 570, 131 Pac. 291, the court said:

"As against the change sought by petitioners, the junior appropriators had a vested right in the continuance of the conditions that existed on the stream at and subsequent to the time they made their appropriations, unless the change can be made without injury to such right. (*Vogel et al. v. Minnesota Canal Co.,* 47 Colo. 534 [107 Pac. 1108].) . . . .

"Where the right to change the point of diversion exists, it is a property right, incident to the water right itself; but it is a conditional right (therefore doubtful and questionable), and does not exist at all, as an incident or otherwise, unless it can be exercised without injury to other vested rights; nor can it be exercised until permission has been obtained in a proceeding of this character. (*Ft. Lyon Canal Co. v. Chew,* 33 Colo. 392, 81 Pac. 37.) Therefore, one who asserts the right to a change in the place of diversion has the burden of proving that the change will not injuriously affect the vested rights of others, although this may involve the proof of a negative." (*New Cache La Poudre Irr. Co. v. Water Supply & S. Co.,* 49 Colo. 1, 111 Pac. 610.)

It was established upon the trial that upon application to change the point of diversion in the Beggs and McBee permits, the same was denied by the state engineer, and we think correctly so. The state engineer could authorize no change in the point of diversion under these permits, that would in any way interfere with the right to the use of the waters of Lewellyn creek by the respondents.

We therefore conclude that the court did not err in finding that McBee and Beggs did not commence or complete, in whole or in part, the work necessary to convey the waters of Lewellyn creek to and upon the lands described in the permit, or upon the lands of the appellant, within the time or in the manner provided in said permits.

Counsel for appellant company questions the right of respondents to maintain the Hall-Goodrich ditch upon the Lewellyn land, for the reason that the ditch was located

thereon without the consent of the owners of the fee. In our opinion there is no merit in this contention. We think the rule to be well established that in an action to quiet title, appellant would not be permitted to rely upon the imperfections of respondent's title in order to establish a better title in itself, but if it is entitled to recover at all, it must recover upon the perfections of its own title. (*Winter v. McMillan,* 87 Cal. 256, 22 Am. St. 243, 25 Pac. 407; *Robinson v. Muir,* 151 Cal. 118, 90 Pac. 521.)

On November 11, 1899, James C. Roush located and claimed a water right on Lewellyn creek of one hundred cubic feet per second of time, to be used for running a sawmill and for domestic and irrigation purposes, by filing and posting a notice designated, "Notice of water right location," and stating in said notice, among other things, "reserving the right to convey said water or any part of it to any other place I may select. Said water is to be conveyed to place of use by ditches or flumes as may be considered most desirable, and I hereby claim the right to enlarge said ditches or flumes or to repair the same whenever or wherever such may be necessary or to change location of same."

This appropriation was by Roush transferred by deed to the appellant corporation on September 23, 1907, under which location and transfer appellant contends that it is entitled to divert the waters therein attempted to be appropriated by Roush to its own use and to change the point of diversion, thereby applying the water of Lewellyn creek to the irrigation of its lands by the means set out in the Roush notice of appropriation. If appellant's contention has merit, at any time during fifteen years succeeding an appropriation of water for power and irrigation purposes, an appropriator may, if he reserves the right to do so, change the point of diversion and means of conducting the water to any other place for use, and a right initiated subsequent to said date of appropriation would be subject thereto; in other words, an appropriator, if appellant's contention were true, fifteen years after making an appropriation, would be permitted (irrespective of rights that

may intervene in the meantime) to change the use of the water, the manner of use and the point of diversion without regard to the rights of others on the stream, based solely upon filing in the office of the county recorder a ''Notice of water right location.'' With this contention we are not in accord.

The right to the use of the waters of Lewellyn creek for the purpose of operating Roush's mill was a vested right, so long as he used it for that purpose. The evidence shows that it required fifteen cubic feet per second of time to operate the Roush sawmill. Roush, however, attempted to appropriate one hundred second-feet, for the purpose of operating his mill and for irrigation, and this he undertook to sell and convey to appellant. The record shows that he irrigated less than one-half an acre of land and had abandoned the irrigation of that one-half acre for some time prior to the commencement of this action.

Roush's appropriation of the water of Lewellyn creek, for the operation of his sawmill, would not, by a conveyance to appellant, authorize the use of said water upon the lands of appellant located at a place above the point of diversion by respondents, and thus defeat the respondents' right to the use of said water for the purpose of irrigation. The fact that Roush appropriated a large quantity of water and reserved the right to himself to change the point of diversion and to use the waters for a dual purpose, would not give him a prior right to the use of the water, except to the extent the water was actually put to a beneficial use within a reasonable time. The proof shows in this case that the quantity of water claimed by Roush and by him attempted to be transferred to appellant largely exceeded the quantity of water put to a beneficial use, either in the operation of his sawmill or upon his land, and therefore exceeded the quantity actually appropriated. (*Senior v. Anderson,* 115 Cal. 496, 47 Pac. 454.) In *Trimble v. Hillar,* 23 Cal. App. 436, 138 Pac. 376, it is held that ''the test of an appropriator's right to water for irrigation is the amount of water actually used for a beneficial purpose. In the case of the *California Pastoral & Agr. Co. v. Madera Canal*

*& Irr. Co.*, 167 Cal. 78, 138 Pac. 718, the court said: ''The effect of the decisions clearly appears to be that one actually diverting water under a claim of appropriation for a useful and beneficial purpose cannot by such diversion acquire any right to divert more water than is reasonably necessary for such use or purpose, no matter how long a diversion in excess thereof has continued. . . . .'' .

It is the settled law of this state that no person can, by virtue of a prior appropriation, claim or hold more water than is necessary for the purpose of the appropriation, and the amount of water necessary for the purpose of irrigation of the lands in question and the condition of the land to be irrigated should be taken into consideration. (*Kirk v. Bartholomew*, 3 Ida. 367, 29 Pac. 40.) A prior appropriator is only entitled to the water to the extent that he has use for it when economically and reasonably used. It is the policy of the law of this state to require the highest and greatest possible duty from the waters of the state in the interest of agriculture and for useful and beneficial purposes.

We think it is therefore clear, that Roush could not appropriate water for the operation of his sawmill and after appropriations were made by the respondents of the right to the use of the waters of Lewellyn creek for irrigation purposes, transfer his appropriation to appellant, and thus defeat the rights of the respondents to the use of the waters for the irrigation of their lands.

There is conflict in the testimony regarding the number of acres of land irrigated by the various respondents, the character of the crops grown upon their lands, the condition of the lands for irrigation, the size and capacity of the Hall-Goodrich ditch and the laterals leading therefrom to the lands of the respondent, and the duty of water. The duty of water depends upon the character and condition of the soil, and in determining the duty of water, reference should always be had to lands that have been prepared and reduced to a reasonably good condition for irrigation. The nature of the soil is so varied that it is absolutely impossible to establish a uniform

standard of duty of water. From the record in this case, it appears that the trial court made a personal investigation of Lewellyn creek and the canal through which water is conducted to the respondents' lands and examined the same.

We do not feel that we would be justified in modifying the decree, except where it is clearly apparent that an injustice has been done to appellant. It is conceded by counsel for appellant that respondents are entitled to one-half of a cubic foot of water per second of time, prior in point of time to the rights of the appellant, but it is contended that the court was not justified, under the evidence, in decreeing to the respective respondents any amount in excess of one-half cubic foot per second of time. This contention by appellant's counsel is not based upon the insufficiency of the notice of appropriation, nor alone upon the incapacity of respondents' canal to conduct the waters to their respective holdings, but upon the ground that respondents' appropriation, except as to the one-half second-foot, is subject to appellant's prior appropriation, based upon the water permits Nos. 2158 and 2978, and upon the Roush appropriation.

In our judgment, the court is fully sustained in its finding that the Hall-Goodrich canal was constructed and through it the waters of Lewellyn creek were conducted upon the lands of the respondents and their predecessors in interest, prior to the initiation of any right in the appellant corporation by reason of the purchase of permits Nos. 2158 and 2978 and the Roush appropriation. And the finding of the court, that said canal so constructed by respondents and their predecessors, known as the Hall-Goodrich canal, was of sufficient size and capacity to carry the quantity of water decreed to the respondents, is fully supported by the evidence.

In our opinion the decree, under finding No. 2, awarding to Peter Rutz an additional seven-fiftieths of a cubic foot of water per second of time from said Lewellyn creek, providing he shall make beneficial application and proof of same within two years from the date of the decree, and upon the furnishing of said proof of beneficial application, the priority of the

water right shall be established as of date December 17, 1900, should be modified, for the reason that said finding is not supported by the evidence. An appropriator of water after conducting the same to the point of intended use has a reasonable time in which to apply said water to such intended use. Rutz had a reasonable time prior to the trial of this cause, in which to apply the waters appropriated by him to a beneficial use. To anticipate what he might do in the future, or to permit him to make a further application of the water to a beneficial use and make proof thereof, we think, under all of the circumstances in this case, would not be warranted, and the trial judge is instructed to modify the decree in this respect.

Hall, in his deposition, testifies that in 1895 he had five acres under cultivation. In 1907, he sold his homestead, consisting of 160 acres, to Kern and Imlay. In October, 1908, Kern transferred his one-half to Imlay, who, on April 21, 1910, sold to Ledbetter and wife. Ledbetter and wife transferred eighty acres, in May, 1910, to respondent King.

From an examination of the testimony covering a period of nineteen years, not to exceed sixty acres of the Hall entry were made susceptible of irrigation.

The court decreed to King one and one-fifth cubic feet of water per second of time. We think this amount was excessive and is not supported by the testimony. The decree will, therefore, be modified, and in lieu of one and one-fifth cubic feet, the court will decree to respondent King nine-tenths of a cubic foot of water per second of time, as of date June 12, 1897.

Appellant assigns as error the failure of the court to ascertain the entire amount of water that flows in Lewellyn creek during the irrigation season, and the failure of the court to decree to all of the parties to the action their right to the use of the waters of said stream. We think that the decree is sufficient, with the modifications ordered, so far as the rights of the respondents are concerned, but upon the authority announced in the case of *Lee v. Hanford,* 21 Ida. 329, 121 Pac.

558, it was the duty of the court not only to fix the date of the appropriation of the respondents and the amount of water that each is entitled to, but also to decree to the appellant whatever right to the use of the waters of said Lewellyn creek it may have been entitled to, and fix the date of the appropriation. The trial court is, therefore, directed to make such additional findings and amendments to its decree as are herein specified. If the court is of the opinion that additional testimony should be introduced on behalf of either of the parties to this action, to aid in determining the exact quantity of water which should be adjudged to the appellant, such additional testimony may be introduced upon this particular question by either of the parties to this action, and the trial court is hereby authorized to fix a time for the taking of said testimony and to enter a final decree as herein indicated.

Each party to this action to pay its own costs.

Sullivan, C. J., and Morgan, J, concur.


### ON PETITION FOR REHEARING.
(April 28, 1915.)

SULLIVAN, C. J.—A petition for rehearing has been filed in this case and after a very careful examination of it the court has concluded to remand the case to the trial court with the following additional instructions:

(1) Amend the judgment or decree so as to require the plaintiff and defendants to put in a proper measuring device for the purpose of measuring the water allotted to them at the point of diversion, as provided in the original decree;

(2) Amend finding of facts to the effect that the plaintiff's irrigation works were of sufficient capacity on August 23, 1909, to carry six cubic feet of water per second of time; and

(3) Amend the decree by awarding to plaintiff a water right of six cubic feet of water per second of time from Lewellyn creek, from August 23, 1909.

These amendments are not to interfere with the prior rights of defendants as established by said decree as modified by the opinion in this case.

Because of the foregoing modifications of the opinion of this court, the petition for a rehearing is denied.

Budge and Morgan, JJ., concur.