(June 29, 1926.)

GONZAGA UNIVERSITY, a Corporation, Respondent, v. LULU MASINI, and LULU MASINI, as Executrix of the Estate of CAESAR MASINI, Deceased, Appellants.

[249 Pac. 93.]

DEEDS—NO EFFECTIVE DELIVERY.

　　There was no placing of deed beyond grantor's dominion and control, essential for effective delivery, without which title cannot pass, where deed, of which grantee had no knowledge, reciting that it should have no effect and should not be recorded till after grantor's death, was left by grantor in scrivener's possession with request to hold it and at time of grantor's death or serious sickness to cause it to be recorded.

---

Publisher's Note.

　See 8 R. C. L. 985.

　See Deeds, 18 C. J., sec. 94, p. 196, n. 17; sec. 95, p. 198, n. 23; sec. 96, p. 200, n. 40; sec. 99, p. 204, n. 68; sec. 113, p. 208, n. 25; sec. 114, p. 210, n. 29.

APPEAL from the District Court of the Eighth Judicial District, for Kootenai County. Hon. Herman H. Taylor, Judge.

Action to recover real property and the rents, issues and profits thereof. Judgment for plaintiff. *Reversed.*

James F. Ailshie and James F. Ailshie, Jr., for Appellants.

A purported deed which states on its face, "this is given and of no effect until after my death and is not to be recorded until after my death," and which is left in the hands of the draftsman and not delivered to the grantee, is not a deed but simply testamentary in character and passes no title. (*Moody v. McComber,* 159 Mich. 657, 134 Am. St. 755, 124 N. W. 549; *Goodale v. Evans,* 263 Md. 219, 172 S. W. 370; *Williams v. Kidd,* 170 Cal. 631, Ann. Cas. 1916E, 703, 151 Pac. 1; *Rice v. Carey,* 170 Cal. 748, 151 Pac. 135; *Johnson v. Cameron,* 136 N. C. 243, 48 S. E. 640.)

A deed of gift stating on its face, "this is given and of no effect until after my death and is not to be recorded until after my death," and left with the draftsman to be held by him and recorded after the death of the maker, is not delivered and never becomes a conveyance of real property. (*Pickens v. Merriam,* 274 Fed. 1; 8 R. C. L., sec. 45, p. 973; Alexander on Wills, sec. 56, p. 63; *Hayden v. Collins,* 1 Cal. App. 259, 81 Pac. 1120; *Walter v. Way,* 170 Ill. 96, 48 N. E. 421; *Johnson v. Johnson,* 24 R. I. 571, 54 Atl. 378; *Schlicher v. Keeler,* 67 N. J. Eq. 635, 61 Atl. 434; *Provart v. Harriss,* 150 Ill. 40, 36 N. E. 958; 6 R. C. L., p. 852, sec. 241.)

A deed of gift *inter vivos* not actually delivered to the donee and where possession is retained by the donor passes no title, interest or right to the donee. (*Hoig v. Adrian College,* 83 Ill. 267; 12 R. C. L., p. 932, par. 10, p. 934, par.

11, and p. 937, sec. 14; *Bruce v. Squires,* 68 Kan. 199, 74 Pac. 1102; *Wright v. Bragg,* 106 Fed. 25, 45 C. C. A. 204.)

Lynn W. Culp and Ferris & Ferris for Respondent.

Real test of the delivery of a deed is this: Did the grantor, by his acts or words, or both, intend to divest himself of title? If so, the deed is delivered. (*Flynn v. Flynn,* 17 Ida. 147, 104 Pac. 1030; *Bowers v. Cottrell,* 15 Ida. 221, 96 Pac. 936; *Doty v. Barker,* 78 Kan. 636, 97 Pac. 964; *Creveling v. Banta,* 138 Iowa, 47, 115 N. W. 598; *Kneeland v. Cowperthwaite,* 138 Iowa, 193, 115 N. W. 1026; *Showalter v. Spangle,* 93 Wash. 326, 160 Pac. 1042; *Martin v. Flaharty,* 13 Mont. 96, 40 Am. St. 415, 32 Pac. 287, 19 L. R. A. 242.)

Where an instrument is intended as a deed it is the settled policy of the law to make the instrument operative and effective and to carry out the wishes of the maker. (Broom's Maxims, 540; Ann. Cas. 1916D, 994, 11 A. L. R. 10; *Young v. O'Donnell,* 129 Wash. 219, 224 Pac. 682.)

Acceptance of grantee will be presumed. (*Deisch v. Moore,* 97 Ark. 262, 133 S. W. 1035; *Burkey v. Burkey,* (Mo.), 175 S. W. 623; 3 Washburn Real Property, 5th ed., p. 305; 1 Devlin on Deeds, sec. 262; *Woodward v. Camp,* 22 Conn. 457.)

WILLIAM A. LEE, C. J.—This action was commenced by plaintiff, Gonzaga University, a corporation, organized as an educational institution under the laws of the state of Washington, with its principal place of business at Spokane, in said state. It succeeded to all the rights, title, property interests and franchises of Gonzaga College, also a corporation of the same place, in May, 1912. The action is against Lulu Masini, individually, and as the executrix of the estate of Caesar Masini, deceased, for the purpose of having the court decree that plaintiff is the owner and entitled to the immediate possession of the west half of lot nine, block

"N," town of Coeur D'Alene, Kootenai county, Idaho, that neither of defendants have any right, title or interest in or to said property, or the right of possession thereof; that it recover rents, issues and profits arising out of appellants' possession of said property received by them since April 12, 1909, with interest; that defendants be required to render an account of the same and for general equitable relief. The complaint, *inter alia*, alleges that on April 12, 1909, Henry Higgins, being the owner of said property and desiring to make a gift of the same to Gonzaga College, executed and delivered a warranty deed, conveying title to said premises to Gonzaga College, it being a corporation and the predecessor in interest of plaintiff; that subsequent to the execution and delivery of the deed and before the same had been filed of record in the recorder's office, Caesar Masini, now deceased, and whose estate is being probated by the said Lulu Masini, without the knowledge, consent or permission of the grantor, or grantee, about November 28, 1909, fraudulently, wrongfully, illegally, secretly, and without any right so to do, obtained possession of the deed and erased therefrom the name of Gonzaga College, and secretly, illegally, fraudulently and wrongfully substituted and wrote into said deed his own name as grantee; that on November 29, 1919, this deed, with said alteration, was, by one James Russell, placed of record in the office of the recorder of Kootenai county, all of which things were done without the knowledge, approval or consent of the said Henry Higgins, or of plaintiff or its predecessor in interest; that on November 29, 1909, said grantor died in the city of Coeur D'Alene, without having any knowledge that Caesar Masini had secured possession of this deed, or had made these changes; that on the death of said grantor, and after the filing of the deed for record, Caesar Masini went into possession of said real property assuming to be the owner, and remained in possession until his death September 14, 1922, and during all of that time received, kept and appropriated to his

own use, the rents and profits of said property; that at the time of his death, defendant Lulu Masini, as executrix of the estate of Caesar Masini, and as devisee under his will, obtained possession of this property and has since retained possession and appropriated and is continuing to appropriate the rents, issues and profits thereof to her own use, claiming to be the owner; that neither plaintiff nor Gonzaga College had any knowledge of these facts until about June 1, 1923; that Caesar Masini wrongfully and intentionally concealed said facts from plaintiff, and its predecessor Gonzaga College; that on August 16, 1923, and within the time provided by law for filing claims, plaintiff filed and served defendant Lulu Masini, executrix, with its claim for said property and the rents, issues and profits thereof. A copy of this claim is set forth in the complaint and shows the total of the rents and profits during this period to be $18,774, with a credit for taxes paid, and interest thereon, of $3,924, leaving a net balance claimed by plaintiff of $14,850, and also a demand for the recovery of title to said premises alleged to be of the value of $8,000. This claim was presented in due form and was rejected by defendant executrix.

It is further alleged that plaintiff has been the owner of this real property since April 12, 1909, and entitled to the possession thereof and of the rents, issues and profits; that defendant Lulu Masini, neither as executrix nor individually, has any right, title or interest in or to said property.

Defendants, appellants here, demurred to this complaint on numerous grounds, the principal ones being that the complaint failed to state facts sufficient to constitute a cause of action against appellant as administratrix, executrix or individually; that the action was barred by C. S., secs. 7581, 7586, 7587, 6596, 6597, 6598 and 6617; that neither respondent nor its predecessor in interest had authority to maintain this action or a right to hold title to real property in this state; that the complaint was uncertain in particulars enumerated. The demurrer was overruled and appellants

answered the complaint, denying that appellant was executrix of Caesar Masini's estate and alleged that she was the administratrix of said estate. The answer then denies, *seriatim,* substantially all of the material allegations of the complaint, some positively and others upon information and belief. As an affirmative defense, appellant alleged that respondent was a foreign corporation and had never complied with the constitution and laws of Idaho with reference to foreign corporations, and that neither it nor its predecessor in interest, Gonzaga College, had any legal capacity or right, under the constitution and laws of this state, to take or hold real property, or to take or hold gifts, bequests or devises of real property; that for fourteen years immediately preceding the commencement of this action, appellant, as administratrix, and her predecessor, the deceased Caesar Masini, were continuously the owners of said property and in the uninterrupted, open and notorious occupancy of the same, and during all of said time had paid all taxes and assessments levied against it; that said cause of action is barred by the sections of the statute above referred to; that respondent should be estopped from asserting its action against defendants for the reason that it had been guilty of inexcusable delay in prosecuting the same; that it had given no consideration for the property, was not a purchaser for value, and that for more than fourteen years it had permitted appellant and her predecessor, Caesar Masini, to occupy, use and improve the same, to the exclusion of plaintiff and all others; that during all of this time, said Caesar Masini was in possession, had record title by a deed from Henry Higgins, dated April 12, 1909, recorded in Book 33, page 614, of the record of deeds in Kootenai county, Idaho, and also by a recorded deed of December 29, 1909, executed by James S. Russell and Neil S. Paul, residuary legatees and devisees of the estate of Henry Higgins, the grantor; that Caesar Masini had caused to be constructed on said lot, a building of the value of

$5,000, and this had been done under a claim of ownership and right of possession, and without opposition or protest from respondent or anyone asserting a right thereto; that Caesar Masini had continuously resided in Coeur D'Alene from the time of said conveyances to the time of his death, and during the greater portion of this time had occupied an office in said building and conducted his business therein under a claim of ownership and had paid all taxes of every kind or character.

Upon these issues the cause was tried by the court, counsel having offered in an exhaustive and thorough manner, a great amount of testimony in support of their respective contentions relating to the questions of fact raised by the pleadings, covering a wide scope and embracing practically every question that the cause of action and defense gave rise to. The court made extensive findings of fact upon all the issues presented by the pleadings, and found generally for the respondent upon most of them substantially in accordance with its contention. The court also found that Caesar Masini and appellant Lulu Masini, as administratrix of his estate, had held the open, notorious and exclusive possession of the whole of said property during all of the time after Henry Higgins' death and had paid taxes on the same amounting to $2,937.50, with accrued interest thereon of $956.80; that the legal and record title during all times subsequent to November 29, 1909, had been in Caesar Masini, but during all of said time the equitable title to said property had belonged to Gonzaga College and its successor, Gonzaga University; that the improvements on the premises, made by Caesar Masini, were of the value of $5,000; that neither respondent nor its predecessor in interest, Gonzaga College, prior to 1923, had knowledge or means of knowledge of the fraudulent acts of Caesar Masini in substituting his name in the place of Gonzaga College in said deed executed by Henry Higgins to it; that neither respondent nor its predecessor, prior to 1923, had knowledge or means of

knowledge that they or either of them had any claim upon or interest in or title to said lot, or any authority or right to oppose and protest any of the acts of Caesar Masini in dealing with this property or in its assertion of ownership or right of possession. The court also found that respondent had presented its claim in due form and the same had been rejected, and that such presentation was not necessary to the maintenance of its action. From the findings and conclusions, a decree was entered for respondent that adjudged and decreed it to be a corporation and the owner and entitled to the exclusive possession of the premises in controversy; that defendants had no right, title or interest to the same as administratrix, executrix, devisee, beneficiary, purchaser, donee, or otherwise; that the record title of said property, standing in the name of Caesar Masini, deceased, is held by appellant Lulu Masini, administratrix, in trust for plaintiff, and she is ordered to execute to respondent a conveyance of the same, and in default of doing so, that the clerk of the court should execute the said conveyance.

In addition to this relief, judgment is entered for respondent against Lulu Masini, as administratrix, for $6,748, with legal interest thereon, and that such sum be paid by her in due course of administration, and judgment is also given against Lulu Masini, personally, for that part of the rent received by her after she assumed dominion and control of the property as devisee and legatee under the will of Caesar Masini, amounting to $1,775 and interest thereon. It was also adjudged that the court should retain jurisdiction until all things directed to be done by way of conveyance from appellant to respondent should be performed. This appeal is from the judgment.

Appellants assign thirty-one errors and set out their points and authorities under seventeen subdivisions. The fourth assignment is to the effect that there is no evidence to support the finding number three that Henry Higgins desired to make a gift of this property to Gonzaga College,

or that he made a deed of the same to Gonzaga College, but, on the contrary, the record copy of the deed offered in evidence by plaintiff, which is claimed to have been altered by Caesar Masini, shows that it was not a grant of title, but merely ambulatory and testamentary in character, and recited on its face:

"This deed is given and of no effect until after my death, and is not to be recorded until after my death."

Appellants' contention is that no title whatever passed from Henry Higgins to Gonzaga College by virtue of this instrument. If this contention is tenable, respondent's cause of action fails and it cannot recover, and a further consideration of the multitudinous questions presented by the record will, for the purposes of this action, be unnecessary.

A consideration of this legal question may more readily be understood by a recital of some of the more material facts and circumstances that gives rise to it in the instant case. Without undertaking to give a precise *résumé* of all the facts pertaining to the alleged execution of the deed by Henry Higgins, upon which respondent bases its claim of title and other facts relating to this controversy, they are substantially as follows:

The witness, Robert H. Muncey, upon whose testimony respondent largely relies for its proof with regard to the execution of the deed by Henry Higgins, as grantor, to its predecessor in interest, as grantee, states them to be substantially as follows: He and the deceased Masini were partners in the real estate and insurance business. On April 12, 1909, in the afternoon, Higgins and Masini came to the office of Muncey and Masini, and Higgins stated that he was not feeling well and requested Muncey to make for him three deeds, one being a conveyance of this lot to Gonzaga College, and another to a Mrs. Gene Hanson. Muncey prepared the first of these deeds and they were witnessed by Muncey and Masini. When the third had been prepared, because of the lateness of the hour, no person was available to sign it as a

witness, excepting Masini, who could not properly be a wit-
ness thereto, it being a conveyance to him, and it was left
to be executed the following morning.   When the deeds had
been signed and acknowledged before Muncey as a notary,
the grantor requested Muncey to take possession of them and
hold them and at the time of the grantor's death or serious
illness, to cause them to be placed of record.   Accordingly,
Muncey took charge of the deeds and retained possession of
the same until about ten days prior to Higgins' death, which
occurred November 29, 1909.   Masini went to Muncey and
stated that Higgins had sent him to get the deed that had
been made to Masini, as he, Higgins, desired to look it over.
Muncey, instead of giving Masini this third deed, gave him
the envelope containing all three deeds and told Masini to
take them to Higgins and return them to him afterwards.

It is claimed by respondent that Higgins had not, in fact,
told Masini to get these deeds from Muncey and that he had
no knowledge that Masini ever did obtain possession of
these deeds from Muncey.   Shortly after this alleged trans-
action, Higgins died and the deeds were never returned to
Muncey.   Respondent also claims that Masini, after obtain-
ing possession of the deed to Gonzaga College, erased there-
from its name as grantee and inserted his own in lieu
thereof, and on the day of Higgins' death, Masini placed
the deed on record.   The truthfulness of Muncey's version
of the transaction is denied by appellants.   Masini having
died some time prior to the commencement of this action,
his lips are sealed.   There are many facts and circumstances
connected with this transaction as Muncey relates them,
which, to say the least, throw doubt upon the accuracy of
much he said.   According to all of the evidence, including his
own statement, he was never in any manner connected with
Gonzaga College, does not appear to have had any relations,
business or otherwise, with the College, which was located
at Spokane some thirty miles from Coeur D'Alene, nor even
to have known any of its officers, teachers, or the clergy of

the denomination that founded the College and was operating it, and none of them seem to have known of his existence until about the time this action was commenced. A still more significant fact is that Muncey claims to have had knowledge of this alleged forgery, which, if it took place, was so grossly fraudulent and criminal in its nature, as appears from his testimony, that Masini's acts should have shocked the dullest conscience into action, but Muncey remained silent, so far as informing Gonzaga College, during all of these years, and until all others who might have known and disclosed the truth about it were dead. If the deceased Higgins had entrusted Muncey with the duty of preparing this instrument and holding it until Higgins should be near death or actually have died, and he, in violation of this trust surrendered the deed to Masini, thereby giving him the opportunity to commit this forgery, and did not thereafter disclose such fact to Gonzaga College or some of its representatives, but waited fourteen years to do so, and until long after Masini and most of the other persons who might have been familiar with the facts were dead, such course of action cannot do otherwise than seriously impeach and greatly discredit his testimony.

Respondent is not shown, in any manner, to have been guilty of laches in asserting its rights. It acted promptly, vigorously and with more than average intelligence and thoroughness in asserting its claim after receiving informaton of the alleged gift. By no rule of law or of common fairness, can it be, in fact, charged with inexcusable laches or delay in asserting or prosecuting a cause of action, although such a lapse of time might operate, as a matter of law, to defeat its right of recovery.

"A delivery is essential to the validity of a deed. It is the final act which consummates the deed, is as necessary as the seal or signature of the grantor, and without it all other formalities are ineffectual and the deed is void *ab initio*, being at most a mere proposition to convey, which may be

withdrawn at any time before acceptance by the other party. Delivery has been called the life of a deed. Certainly no title passes in its absence, even though the intent to deliver is clear and the failure to deliver due to accident. . . . . Whatever disposition has been shown in some cases to raise presumptions on equitable showings, there is no foundation for any rule that will sustain an undelivered deed, and no room for presumption when the facts show there was no delivery, the question whether a deed was perfected by delivery being one which a court of equity regards in precisely the same light that a court of law would.'' (8 R. C. L. 973, sec. 45.)

''While delivery may be by words or acts or both combined, and manual transmission of the deed from the grantor to the grantee is not required, it is an indispensable feature of every delivery of a deed, whether absolute or conditional, that there be a parting with the possession of it, and with all power and control over it, by the grantor, for the benefit of the grantee at the time of the delivery. The dominion over the instrument must pass from the grantor with the intent that it shall pass to the grantee, if the latter will accept it. And where the proof fails to show that the grantor did any act by which he parted with the possession of the deed for the benefit of the grantee, the question of intent becomes immaterial. In other words, delivery may be effected by any act or word manifesting an unequivocal intention to surrender the instrument so as to deprive the grantor of all authority over it or of the right of recalling it; but if he does not evidence an intention to part presently and unconditionally with the deed, there is no delivery. . . . . And while the rule that the grantor must part with all dominion and control over his deed does not mean that he must put it out of his physical power to procure repossession of it, nevertheless, if the deed remains within the grantor's control and liable to be recalled, there is, according to almost unanimous authority, no delivery, notwith-

standing that he has parted with its immediate possession. He must retain no right to reclaim or recall it. Thus it is held that there is no delivery where the deed is handed to the grantor's agent to be deposited by him among the private papers of the grantor, there to remain until the grantor's death or until he shall exercise his will over it by dealing with it according to his pleasure; nor where the deed is handed to the scrivener for safe keeping, and is afterwards handed back to the grantor at his request and in accordance with the understanding between the grantor and the scrivener, the grantee being in ignorance of the deed's existence.'' (8 R. C. L. 985, sec. 53.)

In *Renehan v. McAvoy,* 116 Md. 356, 81 Atl. 586, 38 L. R. A., N. S., 941, it is held that no sufficient delivery of a deed is effected by placing it in the hands of the scrivener or county official for safekeeping, with directions to place it on record upon the death of the grantor. In that case, the deed, after its execution, was placed in the hands of the scrivener who had prepared the same with instructions that he wanted the scrivener to keep it for him and at his death to have it recorded. Afterwards, he came back and requested the deed, and on being asked what he wanted with it, as he had put it into the hands of the scrivener to be placed on record at his death, he stated that he did not want to change it but that it had occurred to him that something might happen to the party holding the deed and no one would know where it was and he thought he would take it to the register of wills for safekeeping, and took the deed away with him. The court said that it was shown beyond all question from what the grantor did and said that he simply intended to constitute Judge Rogers as his agent for the custody of the paper, and he cannot, therefore, be treated in any sense as an agent or depositary for the use and benefit of the grantees, and adds:

''It is established by the overwhelming weight of authority that it is absolutely indispensable, in order to constitute

a sufficient delivery, that the grantor shall part with control over the deed, and shall not retain a right to reclaim it.''

Thereafter, the grantor placed the instrument with the register of wills for safekeeping, and at his death to put it, or have it put, on record. The register accepted the control of the instrument upon these terms, and subsequently, upon the death of the grantor, had the deed recorded. From these facts, the court said that the declarations of the grantor at the time of delivering his deed can admit of but one construction, and that is, he intended to constitute the custodian of the deed as his agent and not the agent of the grantees, and the deed was held ineffectual for any purpose. See, also, the authorities cited in the opinion and notes to case in 38 L. R. A., N. S., 941.

In the instant case the evidence is conclusive, from the terms of the instrument itself, that the grantor Higgins, at the time of signing this deed and placing it in the custody of Muncey, did not intend to vest in the grantee a present interest. The words which he inserted therein that it should have no effect and should not be recorded until after his death, are too plain to require construction or interpretation. It was within his power to change either of these conditions at any time he might see fit to do so. Under most of the authorities this might have been done either by an actual delivery to the grantee or by any other act that would have evidenced an intent to place the instrument beyond his control, such as having the same recorded. But it is not contended, nor could it be, that this was ever done.

While the authorities, including this court, have quite generally held that whether or not there has been a delivery of a deed, where its delivery is controverted, is a question to be determined upon the facts and circumstances of each particular case, the text-writers and the adjudicated cases, without exception so far as our research discloses, agree upon the rule that in order to be an effectual delivery, the deed must be placed beyond the dominion and control of the grantor;

42 Idaho—43

that there can be no delivery where it appears that the grantor has retained a right to repossess the instrument. The authorities frequently say that the question of whether there has been such a delivery is generally a question of fact, or as some of the writers put it, the question of delivery is one of mixed law and fact, meaning thereby to hold that upon a given state of facts, found by the court, the question of whether such facts constitute a delivery is one of law to be deduced by the court from such facts. In the instant case there is no specific finding that this deed was delivered, but in the thirteenth finding, it is said:

"The court finds that from and after the 29th day of November, 1909, the record title to said described lot has stood in the name of Caesar Masini. The court finds that during all of said time the equitable title to said lot was in Gonzaga College, and its successor in interest, the plaintiff herein."

If it is intended thereby to find as a fact, or hold as a conclusion of law, that the title to this property passed to respondent's predecessor, *ipso facto,* upon the death of the grantor, and that the wrongful acts of Caesar Masini in obtaining possession of the deed and substituting his own name in the place of Gonzaga College, gave rise to a resulting trust, the holder of the record title being merely a trustee for Gonzaga College, the *cestui que trust,* such finding or holding cannot be sustained, unless there was such a delivery as would have vested the title in Gonzaga College but for the wrongful act of Masini in changing the same. But I think there is no responsible authority for holding that a deed of conveyance containing a limitation clause that such instrument is to have no effect and not to be recorded until after the grantor's death, vests in the grantee any title to the property, either present or future, until there has been either an actual manual delivery by such grantor, or some act that is equivalent to a delivery, during the lifetime of the grantor.

In *Goodale v. Evans*, 263 Mo. 219, 172 S. W. 370, the instrument granted a life estate to the grantor's wife with a remainder to the children; the *habendum* to the grantee reads: "To have and to hold the premises . . . . from and after the death of the said Hopkins Evans, party of the first part," and the court said:

"This language cannot be tortured into meaning that any right, title, or interest in or to the real estate in question was conveyed to or was vested in the grantees prior to the death of the grantor. . . . . This language is too clear for interpretation or construction."

In *Moody v. Macomber*, 159 Mich. 657, 134 Am. St. 755, 124 N. W. 549, the language in the deed of grant was: "This deed is not to become operative until the death of the grantor named herein, at which time, and from then on, it is to be in full force and effect." The court quotes with approval from Gardiner on Wills, p. 24, the following:

"The essential difference between a deed and a will is that a deed must pass a present interest in the property, although the right to possession and enjoyment may not accrue until some future time, while the instrument, which passes no interest until after the maker's death, is a will."

Applying this rule to the case, the court further says:

"We find that there is no ambiguity in the language used: 'This deed is not to become operative until the death of the grantor named herein.' These words can have but one meaning, viz., that no interest passed to the grantee thereunder until the happening of the event described."

The court held the instrument, though in form a deed, was in fact a will, and the question of whether or not it was delivered was not under consideration; it being testamentary in character, its delivery would convey no estate to a devisee therein named.

In *Schlicher v. Keeler*, 67 N. J. Eq. 635, 61 Atl. 434, that court held:

"A valid delivery of a deed conveying land is not shown when it appears that it was the intention of the grantor that such delivery should relate to the date of his death."

In *Rice v. Carey*, 170 Cal. 748, 151 Pac. 135, the court announced the same doctrine saying that a deed may be handed to a third person to be delivered to the grantee named therein at the death of the grantor, which delivery passes title only if the intention of the grantor was to make the delivery absolute and put the deed beyond his power of control or revocation; the one essential to the validity of the delivery being that the grantor should then and there have intended to finally part with the title.

In *Johnson v. Johnson*, 24 R. I. 571, 54 Atl. 378, that court, in construing an instrument that had been deposited with a third person to be delivered to the grantee on the grantor's death, but which was not executed with the formalities required for the execution of will, held that as a deed it was void for want of delivery in the grantor's lifetime, and void as a will because not executed with the formalities required for the execution of a will, and could not operate as a will.

In *Walter v. Way*, 170 Ill. 96, 48 N. E. 421, that court held that a deed was inoperative for want of delivery to the grantee during the grantor's lifetime, under the following circumstances: Several years before he died, intestate executed a deed to a friend whom he wished to have his real estate after his decease, placing the instrument in possession of a scrivener, with instructions to deliver the same in case intestate died while on a contemplated journey. But, on returning from the trip, he retook the deed, and kept it in his possession until his death, a year later, having remained in control of the property since the execution of the deed, enjoying the rents and profits, and paying the taxes. On the night of his death, intestate, not expecting to die then, informed one L. of the deed, telling him it was in a box

in an adjoining room with other papers, and that after his death the grantee could take it and have it recorded.

I have confined the citation of authorities to that class of cases wherein there was a limitation clause in the deed with regard to when the same should become effective, similar to the one in the instant case. It is generally held, as a matter of law, that such instruments do not become effective or pass any interest of the grantor if delivery takes place after his death, and this is true without regard to what was the intent of the grantor. Practically all of the authorities say that the grantor, having expressed his intention by such words of limitation, parol evidence cannot be received to contradict the terms of the grant as the grantor himself fixed them. In the instant case, Higgins, the grantor, expressly provided that this deed should have no effect and should not be recorded until after his death, and we think it cannot be controverted that it remained under his control and subject to being revoked by him at any time prior to his death. It was, therefore, ineffectual to pass title to respondent's predecessor in interest, and hence, the remaining questions presented by this appeal become immaterial. If no interest could have passed to Gonzaga College by this deed, necessarily, respondent, its successor in interest, has no cause of action and cannot be concerned in this property. Judgment reversed; no costs awarded.

Budge, J., and Heitman, D. J., concur.

Wm. E. Lee, J., concurs in the conclusion reached.

Givens, J., dissents.

Taylor, J., being disqualified, did not sit at the hearing nor participate in the decision.

Petition for rehearing denied.