No. 27,338.

Lethia Johnson, *Appellant*, v. Flora M. Cooper et al., *Appellees*.

SYLLABUS BY THE COURT.

Deeds—*Delivery—Deposit With Third Person.*  The evidence considered, and *held*, a deed of real estate deposited by the grantor with a banker, to be given to the grantee at the grantor's death, was delivered.

Appeal from Woodson district court; Robert E. Cullison, judge.  Opinion filed May 7, 1927.  Reversed.

*G. H. Lamb* and *W. E. Hogueland*, both of Yates Center, for the appellant.
*G. R. Stephenson*, of Yates Center, for the appellees.

The opinion of the court was delivered by

Burch, J.:  The question presented by this appeal is whether a deed of real estate deposited by the grantor with a banker, to be given to the grantee at the grantor's death, was delivered.

Lethia Hayes, now Lethia Johnson and plaintiff in the action, went to live with Jake Kessler and his wife, and remained with them until she married, a period of about three years.  During the first year she received some wages.  After that she simply made her home with the Kesslers, kept house for them, and took care of Mrs. Kessler, who was an invalid.  On October 20, 1915, Lethia Hayes was married to Walter C. Johnson.  After her marriage she visited the Kessler home.  Mrs. Kessler died on December 9, 1915, and after that Mrs. Johnson would see Kessler probably once a month, and he would visit at her home about as frequently.  On December 31, 1919, Kessler remarried.  Within a few months he and his second wife separated, and she later obtained a divorce.  Kessler died in December, 1924, at the age of seventy-six.

The deed in question was executed after Mrs. Kessler's death.  The precise date was not established, but the witnesses referred to her death as the outstanding event related in time to execution of the deed.  Kessler did his banking business at the Neosho Falls State Bank.  F. W. Gardner was cashier, and Errol McCullough was assistant cashier.  When asked to tell the court what occurred at the time the deed was executed, Gardner testified as follows:

"It was after his first wife died.  I don't remember just how long after-

Deeds, 18 C. J. pp. 204 n. 68, 205 n. 70, 74, 207 n. 4, 439 n. 78; 54 L. R. A. 869; 38 L. R. A. n. s. 942; 8 R. C. L. 995.

wards, but he came into the bank and I think he had me draw the deed for him. I am a notary public, and I think I acknowledged the deed. He said he wanted to deed his property to Miss Lethia Hayes, at that time, and he said for us to hold it in the bank to be delivered to her at his death, and I took the deed under those conditions."

With respect to the reasons given by Kessler for deeding the property to Miss Hayes (Mrs. Johnson), Gardner testified as follows:

"Well, he said that she had come there and nursed his wife through her sickness most all the time, and said he felt she had earned it, and was entitled to it, and he wanted her to have it."

Gardner further testified that when the deed was executed it was placed in the vault of the bank. Kessler had a private box in the bank, but the deed was not kept in the box. In response to questions relating to the language Kessler used when he deposited the deed, Gardner testified the deed was left with him for safe-keeping and for delivery to plaintiff after Kessler's death, and Kessler said:

"If anything happens to me, at my death I want you to deliver this to Miss Lethia Hayes."

McCullough heard what Kessler said when he deposited the deed, and testified to the following statements:

"He said he wanted it laid away so that when he died the property would go to Lethia Hayes . . . He said he made this deed out to Lethia because she had been good to them and stayed there and took care of them just as good as any daughter could, and he wanted her to have the home place. . . . Take this deed and put it away . . . I want you both to understand it. . . . It is to be put away, and when I am gone she can have it and have it recorded."

The deed remained in the bank until after March, 1920, when Kessler took away both the deed and his box, and probably in July, 1920, he destroyed the deed.

In a memorandum opinion filed when the case was decided, the district court correctly held that, if the language used by Kessler when he deposited the deed was unambiguous, and was so definite but one interpretation could reasonably be placed upon it, the deed was delivered. The court held, however, the language used was indefinite and ambiguous, and different meanings might reasonably be given to it. Therefore, the court looked further into the evidence, and concluded Kessler intended to constitute Gardner his agent to keep the deed for him, to carry out a gift to take effect in the future. The basis for the conclusion was Gardner's testimony that he under-

stood the deed was left with him for safe-keeping, and did not hesitate to return the deed to Kessler when Kessler called for it, and the conduct of Kessler in calling for the deed when he wanted it, and taking it away as though it were his own.

There was testimony that Kessler told persons he had deeded the property to Lethia; told a witness he had deeded the property to Lethia, but he had changed his mind; and told a witness he once thought he would deed the property to Lethia, and had the deed made, but it was not signed. Witnesses testified Kessler told them he had destroyed the deed, and a witness testified that in March, 1921, Kessler remarked that Lethia did not come to see him as she used to, and he thought she was cold toward him. In stating the case, the district court erroneously referred to this remark as made before instead of after destruction of the deed. In reaching its conclusion, however, the court relied on the conduct of Kessler in reclaiming the deed and destroying it, and not on the testimony concerning his declarations.

In the case of *Young v. McWilliams*, 75 Kan. 243, 89 Pac. 12, the court said deposit of a deed by the grantor with a third person, to be given to the grantee at the grantor's death, effects delivery if the grantor surrenders control over the instrument, but not otherwise. In such a case, title vests at once in the grantee, enjoyment only being postponed, a condition which arises whenever a purpose to establish it is sufficiently manifested, whether by express instructions to the depositary, or otherwise (p. 245). Surrender of control is a matter of intention at the time the deposit occurs, and the ultimate test of delivery is whether the grantor, by statements and through conduct, manifested intention to vest title in the grantee (p. 252).

In this instance, Gardner and McCullough testified according to their best recollections. It was not to be expected they could repeat verbatim what Kessler had said; but for the purposes of this case, we know what occurred when the deed was deposited, and the transaction is barren of anything to suggest that Kessler was leaving the deed with Gardner subject to reserved control over it. He wanted to deed the property to Lethia; he felt she had earned it, and was entitled to it, and he wanted her to have it; Gardner was to hold the deed in the bank, to be delivered to her at his death; he wanted the deed to be delivered to Lethia at his death; it was to be

laid away, so that when he died the property would go to her; she had been as good as a daughter to him; he wanted her to have the home place; the deed was to be put away, so that when he was gone she could have the deed and have it recorded. Gardner accepted the deed, and put it away under the conditions Kessler stated, and the transaction is susceptible of but one interpretation. Kessler's sole thought was, so far as words and conduct disclosed, that he was making a deposit of the deed then and there which would insure delivery of it to Lethia when he died.

In no event was Gardner's opinion about the effect of the transaction competent, and the court was not authorized to consider it. Because Kessler's intention at the time he deposited the deed is unmistakable, his subsequent conduct in getting possession of the deed and destroying it had no effect on the previous completed delivery.

The district court misled itself by substituting a lot of legal concepts for fact data. The court's thinking was done in terms of "capacity as agent," "fiduciary relationship," "obligation to hold adversely," "intention to affect legal relations," and the like. Kessler knew nothing about such things. He was just deeding the home place to Lethia, and leaving the deed at the bank for her so when he was gone she could have it and record it. When this fact of intention is found, the law applicable to the situation created may properly be discussed in the court's phraseology.

The controlling facts are without contradiction or dispute, and were in effect found in the court's memorandum opinion. Applying the law to the facts, they establish delivery of the deed.

The judgment of the district court is reversed, and the cause is remanded with direction to enter judgment for plaintiff.