(No. 6674.   March 22, 1940.)

JOHN F. CELL, Appellant, v. DANIEL DRAKE, JOHN DRAKE, SAMUEL DRAKE and SUSAN DRAKE FLAGLER, Respondents.

[100 Pac. (2d) 949.]

Fisher & Coffin, for Appellant.

S. L. Tipton, for Respondents.

GIVENS, J.—Statements of the facts of the case appear in the opinions of Ailshie, C. J., and Morgan, J.

I concur with Morgan, J., as to the statute of limitations.

It seems to me the remaining and pivotal point in this case is whether there was an irrevocable delivery of the deed by the grantor during her lifetime either to the grantee or to someone else for his benefit, intending then to pass title, though reserving possession during her lifetime. (16 Am. Jur. 516–521.)

The complaint alleged the delivery of the deed by Mrs. Sandlin to appellant. It is further alleged appellant put and kept the deed in his secret box in the house where both were living and so far as he knew it remained there until surreptitiously removed. The court found: "That said deed was not during the lifetime of Clara S. Sandlin (grantor), delivered to appellant." The court had the right to believe Judge Dunbar and disbelieve appellant, and on such a premise the above finding is correct so far as it went. But if the point be correct that it is not only a question of whether irrevocable delivery had or had not been made to the grantee, but that the second contingency must also be determined, that is, whether there was irrevocable delivery to a third person for the grantee, the above finding is insufficient.

Appellant's cause of action was to quiet his title based on a deed. The testimony of Judge Dunbar was admitted without objection and aside from the testimony of appellant himself, is uncontradicted. If appellant's testimony was true the deed was delivered to him. If Judge Dunbar's testimony was true it was not delivered to appellant but to Judge Dunbar for appellant and there is evidence it was so delivered. If either event transpired and the grantor's intention was irrevocable, title passed to appellant.

The proof of delivery as made by the testimony of Judge Dunbar did not conform to the specific allegations of the complaint. Under similar situations this court has held that though there was no motion to amend the pleadings to conform to the proof, if no objection was made to the introduction of the particular evidence (and none was made herein), the complaint will be deemed amended. (*Sarvis v. Childs Bond etc. Co.*, 49 Ida. 79, 87, 286 Pac. 914, citing and relying on *Hayes v. Flesher*, 34 Ida. 13, 17, 198 Pac. 678.)

The cause should be reversed and remanded for the learned trial court to hear further evidence if either party so desires and make a specific finding as to whether or not the deed was delivered irrevocably to Judge Dunbar for appellant. (*Jensen v. Bumgarner*, 25 Ida. 355, 137 Pac. 529; *American Min. Co., Ltd., v. Trask*, on rehearing, 28 Ida. 650, 156 Pac. 1139; *Sarret v. Hunter*, 32 Ida. 536, 185 Pac. 1072; *Muckle v. Hill*, 32 Ida. 661, 187 Pac. 943; *Turner Agency v. Pemberton*, 38 Ida. 235, 221 Pac. 133.)

AILSHIE, C. J.—To my mind, the test to be applied to this case is: Did the grantor reserve any right to recall the deed from the possession of the depositary? If she did, there was no delivery and the conveyance failed. If she did not reserve the right to reclaim it, the title passed, subject to grantor's life estate therein. This question cannot be answered by *what she thereafter did in reclaiming* the deed but it must rather be answered by ascertaining what she had a *legal right to do*. The testimony on this particular issue is as follows:

Judge Dunbar says:

"A. . . . . She had made a will, and in this will this man, Mr. Cell—by the terms of it he would have received this property on her death, and she came to me and told me she thought it would be more economical or better if she had a deed, and that was the theory on which that deed was made. . . . .

"Yes, I went to her house. I had been requested to go. . . . .

"Q. What did you do there?

"A. Well, I had prepared a deed for her, to Mr. Cell, and I took the deed over there, and she signed it and acknowledged it before me as a notary, . . . .

"Q. Did you give—turn the deed over to Mr. Cell?

"A. No, sir, I did not turn the deed over to Mr. Cell, but what happened was this, that when the deed was acknowledged, and signed, we called in Mr. Cell into the room, and told him about it, and *I showed him the deed,* and then Mrs. Sandlin said to me, 'Mr. Dunbar, I want you to take this deed and put it *in your safe* and *keep it in your safe, and at any time after my death that Mr. Cell asks for it, why, give it to him.'*" (Italics supplied.)

Now it seems clear, from the testimony of Judge Dunbar, who drew the deed and took the acknowledgment, that his instructions were: "Take this deed and put it in your safe, and *keep it in your safe,* and at any time *after my death* that Mr. Cell asks for it, why give it to him."

Judge Dunbar further says:

"I showed him the deed . . . . I explained to him that Mrs. Sandlin had made this deed and he understood then that *it was to be delivered to him after her death.*"

It appears to me that the positive instruction given to Judge Dunbar, to keep the deed in his safe until after Mrs. Sandlin's *death,* and to deliver it to Cell *after Mrs. Sandlin's death,* precludes any intention, either express or implied, that Mrs. Sandlin reserved the right or privilege of recalling the deed at any time prior to her death; and of course she could not do so afterward. The instruction is plain and unambiguous.

Under a well recognized line of authorities in this country, a deed to real property may be executed and placed in the hands of a depositary or escrow holder for delivery to the grantee after the death of the grantor, and constitutes a present passage of title with a reservation of a life estate in the grantor. (*Showalter v. Spangle,* 93 Wash. 326, 160 Pac. 1042; *Martin v. Flaharty,* 13 Mont. 96, 32 Pac. 287, 40 Am. St. 415, 19 L. R. A. 242.)

The rule is well stated by the supreme court of Washington in the case first above cited, wherein it is said:

"When, however, the grantor delivers the deed to a third person in escrow to be held until the grantor's death and then delivered to the grantee, the grantor retaining no dominion

or control over it, the delivery is valid, and an immediate estate is vested in the grantee at the date of the delivery of the escrow, subject to the grantor's life estate.''

Here it seems that the intention of the grantor at the time of the execution of the deed is unmistakable, that she clearly intended to part with possession and control of the deed and still retain *possession* of the realty during her lifetime. If that be true, then she could not later change the legal effect of the transaction by changing her mind and recovering possession of the deed from the depositary. (*Maxwell v. Harper*, 51 Wash. 351, 98 Pac. 756; *Burgess v. Fowler*, 200 Ala. 196, 75 So. 954; *St. Clair v. Marquell*, 161 Ind. 56, 67 N. E. 693; *Johnson v. Cooper*, 123 Kan. 487, 255 Pac. 1112; *Cook v. Sadler*, 214 Mich. 582, 183 N. W. 82; *Dickson v. Miller*, 124 Minn. 346, 145 N. W. 112.)

The fact that the depositary returned the deed to the grantor on demand does not affect the legal status whatever. He was bound by the instructions given him at the time the deed was deposited with him. (*Johnson v. Fleming*, 301 Ill. 139, 133 N. E. 667; *Thompson v. Calhoun*, 216 Ill. 161, 74 N. E. 775; *White v. Watts*, 118 Iowa, 549, 92 N. W. 660; *Johnson v. Cooper, supra; Temple v. Coleman*, (Tex. Civ. App.) 245 S. W. 264; *Loomis v. Loomis*, 178 Mich. 221, 144 N. W. 552; *Gappmayer v. Wilkenson*, 53 Utah, 236, 177 Pac. 763; *Maxwell v. Harper, supra*.)

Respondent contends that the case of *Gonzaga University v. Masini*, 42 Ida. 660, 249 Pac. 93, tends to support the judgment herein. A careful analysis and understanding of that case will disclose that it does not support the contention here made. The really controlling question in that case was written on the face of the deed as follows:

"*This deed is given and of no effect until after my death and is not to be recorded until after my death.*" (Italics supplied.)

By the terms written on the face of that deed, no title could pass until after the grantor's death. (*Gonzaga University v. Masini*, 42 Ida. 660, 668, 249 Pac. 93.) In the concluding part of the opinion (p. 677) Chief Justice Lee, who wrote the case, said:

"I have confined the citation of authorities to that class of cases wherein there was a limitation clause in the deed with regard to when the same should become effective, similar to the one in the instant case. It is generally held, as a matter of law, that such instruments do not become effective, or pass any interest of the grantor if delivery takes place after his death, and this is true without regard to what was the intent of the grantor. Practically all of the authorities say that the grantor, having expressed his intention by such words of limitation, *parol evidence cannot be received to contradict the terms of the grant as the grantor himself fixed them."* (Italics supplied.)

I am in entire accord with the rule stated in the Gonzaga-Masini case and feel confident this case does not come within the authority of that case.

█ Apparently all the justices are in substantial accord as to the law governing the delivery of an executed deed to a depositary for subsequent delivery to the grantee after the death of the grantor. The majority are agreed that the judgment must be reversed, while Justices Budge and Morgan hold that it should be affirmed. Two of the majority think that the reversal should be accompanied with instructions to enter judgment for appellant, but a majority are not so agreed.

In view of the difference of opinion, as to the effect of the evidence in the case, we have concluded to reverse the judgment and remand the case to the trial court, with instructions to hear any further evidence that either party may desire to submit, on the question of the delivery of the deed to the depositary; and the intent of the grantee as to whether she intended at the time of execution and delivery of the deed to reserve the right to recall or revoke it; and to make findings and to enter judgment accordingly. It is accordingly so ordered, with costs to follow the result of case in the lower court.

I am authorized to say that Justice Holden concurs with me in this opinion.

BUDGE, J., Concurring in Part and Dissenting in Part.— In my opinion the judgment in this case should be affirmed by this court and not remanded to the trial court, "with in-

structions to hear any further evidence that either party may desire to submit, on the question of the delivery of the deed to the depositary; and the intent of the grantee as to whether she intended at the time of execution and delivery of the deed to reserve the right to recall or revoke it; and to make findings and to enter judgment accordingly.''

No other finding, in the face of the record, could be made by the trial court than that Mrs. Sandlin, when she gave the deed to Judge Dunbar, her attorney, did not place or intend to place the title to the property irrevocably beyond her control. The trial court found that appellant was

''not the sole and separate owner in fee simple entitled to the possession and in actual possession of the property described in paragraph one of the plaintiff's amended complaint; that plaintiff as grantee did not during the life of CLARA S. SANDLIN, receive a deed, wherein CLARA S. SANDLIN, a widow was grantor and the plaintiff was the grantee of the property described in Plaintiff's amended complaint.''

Furthermore, the trial court found ''that said deed was not during the lifetime of CLARA S. SANDLIN, delivered to the plaintiff.''

The evidence supports the court's findings. If appellant never received the deed, which is true, because he offered abundant evidence to establish the fact that he never did receive the deed; having never received the deed, it cannot be logically contended that there was any intention on the part of Mrs. Sandlin that she place the deed beyond her irrevocable control. She retained the same right to destroy the deed that she had to change or destroy her will. Appellant not only failed to establish his cause of action, but on the contrary disproved it.

To my mind, no good purpose could be served by further delay and additional expense in remanding the case for further findings.

MORGAN, J., Dissenting.—This is a suit to quiet title. Appellant, who was plaintiff in the district court, filed his complaint wherein he alleged, among other things, that he was the sole owner, in fee simple, of Lot 5 and the South Half of Lot 4, Block 20 of Dundee First Subdivision in Ada County, Idaho; that on or about May 15, 1932, Clara S. Sandlin made,

executed, acknowledged and delivered to appellant a deed to said property, and that previous to said date she had been the record title owner thereof; that on or about October 20, 1927, appellant entered into a parol contract with Mrs. Sandlin, who was sixty-nine years old and in failing health, whereby it was agreed that he should take care of her for the remainder of her life and that, for such services, he should receive the real estate above described; that said agreement has been fully performed on his part, and that the deed so executed and delivered, by her to him, was for the purpose and with the intent to carry out said agreement and to turn over the property to him; that upon receipt of said deed appellant placed it in a receptacle, in his home, which he regarded as a safe place; that it remained there until some time shortly before the death of Mrs. Sandlin, which occurred May 12, 1935; that he, thereupon, made diligent search and inquiry for the deed but it could not be found; that the removal and destruction of the deed was without his knowledge or consent.

It is further alleged in the complaint that the estate of Mrs. Sandlin has not been probated; that the deceased left surviving neither father, mother, husband, nor child, and that John Drake, Samuel Drake, Daniel Drake, Charles Drake and Susan Drake Flagler, named as defendants, are cousins of said Clara S. Sandlin, deceased.

As a second cause of action appellant alleged that for more than five years immediately prior to the commencement of the action he was in "actual, open, notorious, obvious, adverse, hostile, uninterrupted, exclusive and continuous" occupancy and possession of said real estate and that the right of the defendants was barred by Idaho Code Annotated, section 5-204. The prayer of the complaint is that the defendants, and each of them, be required to set out any right, title or interest they may have in said property, or any part thereof; and that all adverse claims be settled and determined by the court; that it be decreed that neither of the defendants has any claim, title or interest in the property, and that plaintiff, appellant herein, be decreed to be the sole owner of a fee simple title thereto.

In support of the allegations of his complaint appellant testified that he became acquainted with Mrs. Sandlin "in the early twenties," at which time she lived at 1001 East Franklin Street in Boise, and he boarded there; that in 1927 she sold the Franklin Street property and purchased the real estate here in controversy; that the house was in a dilapidated condition when she purchased it and he, being a carpenter, repaired it and built an addition to it; that he and Mrs. Sandlin resided in the property from the time she purchased it until her death and that he made the last payment, in the sum of $80, on the purchase price of it.

Appellant further testified that some time in May, 1932, Mrs. Sandlin deeded the property to him. With respect to the execution and delivery of the deed he testified that Mrs. Sandlin called William C. Dunbar, a lawyer, to draw the deed; that she was very ill at the time; that Mr. Dunbar came to the house where he and Mrs. Sandlin lived and drew the deed there; he further testified:

"Mr. Dunbar drew the deed—I was in the kitchen—and Mrs. Sandlin called me in. She was sitting in the middle of the room, and I stood facing the east. Mr. Dunbar—then Mr. Dunbar stepped over, with these words, 'Here Mr. Cell, is your deed to this property,' and at the same time I had the deed in my hand. Then he added, 'She has deeded you this property—Mrs. Sandlin has deeded you this property.'

Q. "What did you do then?

A. "Then I opened the deed and looked it over, and I seen her name, 'Mrs. Clara S. Sandlin, a widow, to John F. Cell,' and the description of the lot 5 and—of half of south lot 4, in block 20, in Dundee Subdivision. And after I had looked over that, then I turned it, and I seen Mrs. Sandlin's signature, very poorly written because she was in very poor health; and then I seen Mr. Dunbar's signature, and the notary's stamp or seal."

With respect to the consideration expressed in the deed, he testified it was $1, but that he did not pay anything. He further testified:

"I don't know that there was any consideration, more than she—simply for my kindness. I never asked for anything."

William C. Dunbar, called as a witness for appellant, testified, on direct examination by Mr. Gillis, appellant's attorney, that he was engaged in the practice of law; that for a number of years prior to her death he had been Mrs. Sandlin's attorney; that he had been requested to go to her house in May, 1932. He further testified:

Q. "What did you do there?

A. "Well, I had prepared a deed for her, to Mr. Cell, and I took the deed over there, and she signed it and acknowledged it before me as a notary, . . . .

Q. "Did you give—turn the deed over to Mr. Cell?

A. "No, sir, I did not turn the deed over to Mr. Cell, but what happened was this, that when the deed was acknowledged, and signed, we called in Mr. Cell into the room, and told him about it, and I showed him the deed, and then Mrs. Sandlin said to me, 'Mr. Dunbar, I want you to take this deed and put it in your safe and keep it in your safe, and at any time after my death that Mr. Cell asks for it, why, give it to him.'

Q. "What was done with the deed, then?

A. "I took the deed back to my office and put it in my safe, in an envelope in which I had the papers of Mrs. Sandlin. It was marked with her name, and put in my safe.

Q. "Had you told Mr. Cell that the deed—that it was his deed?

A. "No, sir, I did not tell him that it was his deed, but I explained to him that Mrs. Sandlin had made this deed, and he understood then that it was to be delivered to him after her death.

Q. "Delivered after her death?

A. "After her death, yes, sir.

Q. "Had Mrs. Sandlin told you that's what she wished to do?

A. "Yes. Yes, Mr. Gillis, because she—if I may explain: She had made a will, and in this will this man, Mr. Cell—by the terms of it he would have received this property on her death, and she came to me and told me she thought it would be more economical or better if she had a deed, and that was the theory on which that deed was made.

Q. (By Mr. Gillis): "She really had determined to give the property to him?

A. "Positively, on her death. There was no question in my mind about that, at all.

Cross-examination by Mr. Tipton: "What became of it after you took the deed and put it in your safe?

A. "After I took it and kept it in my safe about a year and a half, after—in October, I think, 1933, Mrs. Sandlin came to my office one day and said that she wanted to get all of her papers, and so my stenographer went to the files and got this envelope out and handed to her all the papers, including that deed.

Q. "You have never seen it since?

A. "I have never seen it since.

Q. "What did her papers consist of, at that time?

A. "Mr. Tipton, I couldn't tell you, exactly. I had transacted various matters for her, and I would say there were papers, some title deeds, and things of that kind; but whatever I had of hers, that had accumulated in a year or two, was in this particular envelope.

Q. "So that you did not at that time deliver that deed to the plaintiff in this action?

A. "No, sir, I let him see it. He examined the deed. But the deed was not delivered to him then, but was taken away and taken to my office."

Ida Witchey, a nurse who attended Mrs. Sandlin during seven weeks immediately prior to April 3, 1935, testified that on an occasion, about the middle of that period, Mrs. Sandlin directed her to get a drawer from a writing desk in her (Mrs. Sandlin's) room; that when she brought the drawer Mrs. Sandlin took therefrom the deed in question and asked the witness to read it to her, which she did; that after the deed was read the witness, pursuant to direction from Mrs. Sandlin, destroyed it by cutting and burning it in the latter's presence. Mrs. Sandlin died May 12, 1935.

The record further discloses that the property was assessed for taxation to Mrs. Sandlin after the execution of the deed, as it had been theretofore, and that during the time, after the deed was executed and prior to her death, she continued

to claim, and was accorded, a widow's exemption from taxation on the property. The trial resulted in judgment for the defendants, from which plaintiff appealed.

Appellant's contention, based on the statute of limitations, cannot be sustained. The record shows, without contradiction, that he and Mrs. Sandlin resided in the house on the premises until she was taken to the hospital, about April 3d, preceding her death May 12, 1935, and that, during her lifetime, he never asserted claim of ownership of the property adversely to her. The amended complaint was filed November 17, 1937. Section 5–204 of our code, on which appellant relies, fixes five years as the period of limitation. Section 5–210, which has to do with claim of title by adverse possession, has this provision:

"Provided, however, that in no case shall adverse possession be considered established under the provisions of any sections of this code unless it shall be shown that the land has been occupied and claimed for the period of five years continuously, and the party or persons, their predecessors and grantors, have paid all the taxes, state, county or municipal, which have been levied and assessed upon such land according to law."

The remaining question is as to whether Mrs. Sandlin, when she delivered the deed to her attorney, Judge Dunbar, and told him to take it to his office and keep it in his safe and, at any time after her death Mr. Cell asked for it to give it to him, intended the deed to be a present conveyance of the property to Cell. In other words, did she intend to place the deed beyond her control, or did she intend the title to remain as it was when her will was in existence, for which the deed was substituted, to be and remain hers, subject to her dominion and control as long as she lived? In *Gonzaga University v. Masini,* 42 Ida. 660, 672, 249 Pac. 93, 97, this court quoted from *Renehan v. McAvoy,* 116 Md. 356, 81 Atl. 586, 38 L. R. A., N. S., 941, as follows:

"It is established by the overwhelming weight of authority that it is absolutely indispensable, in order to constitute a sufficient delivery, that the grantor shall part with control over the deed, and shall not retain a right to reclaim it."

In a suit to quiet title, it is incumbent on plaintiff to establish that he has a title to be quieted. He has the affirmative of the issue and must prove his title by a preponderance of evidence. He must succeed, if at all, on the strength of his own title, not on the weakness of that of his adversary. (*Washington State Sugar Co. v. Goodrich,* 27 Ida. 26, 147 Pac. 1073; *Wing v. Wallace,* 42 Ida. 430, 246 Pac. 8; *Steinour v. Oakley State Bank,* 45 Ida. 472, 262 Pac. 1052; *Snell v. Stickler,* 50 Ida. 648, 299 Pac. 1080; *Harris v. Chapman,* 51 Ida. 283, 5 Pac. (2d) 733; *Federal Land Bk. v. Union Cent. L. Ins. Co.,* 51 Ida. 490, 6 Pac. (2d) 486.)

Appellant, both in his pleading and in his testimony, relied on a deed which, he asserted, had been delivered to him; which he deposited in a secret place, and which had been taken surreptitiously therefrom, without his knowledge or consent, and destroyed. Appellant's testimony and his complaint, are contradicted by his witness, Judge Dunbar, who testified, as above quoted.

The trial court found:

1. "That the plaintiff is not the sole and separate owner in fee simple entitled to the possession and in actual possession of the property described in paragraph one of the plaintiff's amended complaint.

2. "That plaintiff as grantee did not during the life of Clara S. Sandlin, receive a deed, wherein Clara S. Sandlin, a widow was grantor and the plaintiff was the grantee of the property described in plaintiff's amended complaint.

3. "That on or about the 15th day of May, 1932, Clara S. Sandlin, signed and acknowledged a warranty deed, conveying to plaintiff as sole grantee, the property described in plaintiff's amended complaint; that said deed was not during the lifetime of Clara S. Sandlin, delivered to the plaintiff."

The finding that a deed had been signed and acknowledged by Mrs. Sandlin, conveying to appellant the property involved in the action, and that it was not delivered to him during her lifetime, stops short of disposing of the question presented by the evidence to the effect that it was delivered to Judge Dunbar with direction to deliver it to the grantee, on his request, after the grantor's death. If the deed was given

to Judge Dunbar by Mrs. Sandlin with direction to deliver it to appellant after her death, and if in so doing she intended to, and did, place it irrevocably and forever beyond her control, conveyance was complete and title vested in appellant to take effect after Mrs. Sandlin's death. (16 Am. Jur. 516–521.) The burden of proof was on appellant to establish, by preponderance of evidence, that in giving the deed to Judge Dunbar Mrs. Sandlin intended to place the title irrevocably beyond her control.

The evidence introduced by and on behalf of appellant absolutely fails to establish that it was Mrs. Sandlin's intention to place the deed beyond her control and it establishes the contrary. Appellant had an opportunity to introduce all the evidence he had bearing on the case. He called Judge Dunbar as a witness, and is bound by the testimony he gave, which contradicts the testimony given by appellant himself. The failure of the court to find as to Mrs. Sandlin's intention when she delivered the deed, if erroneous, is an immaterial error, for no finding can be made on that point which will be sustained by the evidence, that she intended to, and did, place the deed beyond her control. I. C. A., sec. 5–907 provides:

"The court must, in every stage of an action, disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the parties and no judgment shall be reversed or affected by reason of such error or defect."

A long line of Idaho cases wherein this section has been cited and followed will be found in the code annotations thereto.

I join Justice Budge in the opinion that no good purpose will be served by remanding the case for further findings, and that the judgment should be affirmed.